TERRITORY EX REL. TANNER, appellant, v. POTTS, respondent.

MANDAMUS — *not a civil action — proper parties.* A proceeding in mandamus is not a civil action under our Code of Procedure, with individual parties plaintiff and defendant. The action should be brought in the name of the Territory at the relation of the party beneficially interested. Case of *Chumasero v. Potts*, 2 Mon. 242, considered.

STATUTE OF LIMITATIONS — *due diligence.* Though the Statute of Limitations only applies in express terms to civil actions, and the issuance of a writ of mandate rests in the discretion of the court, yet courts in exercising that discretion will be guided by the bearing of that statute, upon analogous civil actions, as is done in equity cases.

An applicant for this writ should exercise due diligence. After the delay shown in this case the court below properly refused the application.

CONSTRUCTION OF STATUTE. Section 448 of our Criminal Practice Act, makes it the duty of the governor, not as executive of the Territory, to audit the expenses of the messenger duly appointed to return a fugitive from justice. These expenses would properly include a reasonable compensation for time as well as actual and necessary outlays of money in the service, and should not necessarily depend upon the return of the fugitive. What such reasonable compensation would be is left by the statute to the discretion of the governor, but an application to compel the governor to audit such a claim, if made in due time, should be entertained.

*Appeal from Third District, Lewis and Clarke County.*

THIS cause was tried in the court below by WADE, C. J., on demurrer to the so-called complaint and was appealed from the judgment sustaining the demurrer.

E. W. TOOLE, for appellant.

The duty sought to be enforced in this action is a purely ministerial one enjoined by act of legislature, and not one belonging in any way to the office of governor. 2 Mon. 256 ; 51 Cal. 328–338.

The petition or affidavit shows that the plaintiff is beneficially interested ; the relief sought is against a public officer charged with performance of a duty enjoined by law ; and that he has no other plain, speedy and adequate remedy at law.

There is no controversy as to the amount to which plaintiff is

entitled, if entitled at all, so that there is no question involving the discretionary powers of defendant. The demurrer admits all. The plaintiff has a legal claim and the law gives no other remedy. 7 Cush. 226; Moses on Man. 54, 55, 79, 86.

This is not of the class of actions affected by the Statute of Limitations. 15 Minn. 221; 2 Mon. 258.

The statute relied on only took effect August 1, 1878, it cannot apply to the case at bar. 17 Wall. 596; 10 Cal. 305; Angell on Lim. 261.

Sections 447–8 of our Criminal Practice Act do not warrant tne interpretation that the messenger shall receive nothing in case he does not return the fugitive. It is the duty of the governor to know that the fugitive is in custody before issuing his warrant, and when the messenger has performed his duty in obedience thereto he is entitled to compensation.

SANDERS & CULLEN, for respondent.

Mandamus only issues to an inferior tribunal or person and would not properly apply to control the acts of the governor. See High on Ex. Leg. Rem., § 120 *et seq.*

This action is an attempt to interfere with the discretionary power of the governor, which all authorities agree cannot be done. High on Ex. Leg. Rem., § 120; Moses on Man. 80; *McDougall* v. *Bell*, 4 Cal. 178; *Marbury* v. *Madison*, 1 Cranch, 169.

Section 448 of Criminal Practice Act vests the governor with the authority to pass upon the justice and legality of the messenger's claim, and places it beyond the reach of mandamus.

Neither under the United States nor Territorial statutes is an officer entitled to pay unless he brings the prisoner with him. His only remedy is an appeal to the legislature.

This action is an attempt indirectly to get judgment against the people of the Territory on an unliquidated demand of extortionate dimension. It is an unwarranted use of the process. High on Ex. Leg. Rem., §§ 101–2.

The supreme court could not try the issues of fact that would arise in the case. The law has established another tribunal for

questions of this kind. *United States* v. *Guthrie*, 17 How. 284.

According to the decisions of the United States courts, this proceeding would be an action to which the Statute of Limitations applies. *Kendall* v. *United States*, 12 Peters, 524; *Kendall* v. *Stokes*, 3 How. 100; *Commonwealth* v. *Dennison*, 24 How. 97.

The Statute of Limitations is properly applicable in any event. Ang. on Lim. 20; *Miller* v. *M'Intyre*, 6 Peters, 61; *Elmendorf* v. *Taylor*, 10 Wheat. 152; Story on Part., § 233 a.

For New York court authorities on this case see *People* v. *Colburn*, 20 How. Pr. 378; also, *People* v. *Lewis*, 28 id. 159.

KNOWLES, J. This is an application for a writ of mandate, at the instance of the above-named appellant, Tanner, commanding the above-named respondent, Potts, as governor of Montana Territory, to audit and allow a claim of said Tanner for expenses incurred and for compensation for services, while acting as messenger under the appointment of the said Potts, and required by the warrant issued by him as governor of Montana Territory, to proceed to the State of Ohio and there receive and convey to Montana one Gus. Callahan, who was a fugitive from justice therefrom, and who had been duly indicted for an offense against the laws thereof, in the county of Gallatin in said Territory.

I think it my duty to remark that the proceedings in this case have been treated throughout as though it was a civil action, legal in its nature. The applicant for the writ is treated and named as the *plaintiff* in what is termed a complaint and the said Potts is called the *defendant*, and this so-called complaint is demurred to by the so-called defendant. The practice in this respect was so fully considered and determined in the case of *Chumasero* v. *Potts*, 2 Mon. 242, that I think it surprising that the courts of the Territory should be confronted with such proceedings. The writ of mandate, under our statute, issues upon an application, which is nothing more than a motion, and this supported by an affidavit of the applicant or some one in his behalf. When the writ issues, it is in the name of the Territory,

on the relation of the beneficiary, and if the writ is in the alternative, the person who is commanded by the writ must show cause why the writ should not be made peremptory, by an answer thereto. If the affidavit which should not be entitled is insufficient, this may be attacked on motion to quash the writ. In mandamus proceedings there can be no such case as *Tanner* v. *Potts.* The proceedings should be entitled: "The Territory of Montana at the relation of *Tanner* v. *Potts.*" This court is called upon to treat this complaint as an affidavit to support an application for a writ of mandate, and the demurrer thereto as a motion to quash the writ. It is to be hoped that the profession will more carefully observe the well-established rules of practice in this proceeding hereafter.

The first point I shall consider is: Were the proceedings herein barred by the Statute of Limitations? The proceeding to procure a writ of mandate, according to the decision of this court in the case of *Chumasero* v. *Potts,* cited above, is not what is denominated a civil action under our Code. The Statute of Limitations then does not in express terms apply to the same. That applies to civil actions. The issuance of the writ of mandate, however, rests in the legal discretion of the court, to whom application is made therefor. In exercising this discretion the court may consider the bearing of the Statute of Limitations upon analogous civil actions and determine therefrom whether the application has been made in due form. In equity cases, to which the Statute of Limitations in some States do not apply, this rule is observed, and it seems to me to be a good one in proceedings in mandamus. In the case of *The People* v. *Supervisors of Westchester,* 12 Barb. (N. Y. S. C. R.) 446, it was held that that court would entertain an application for a writ of mandamus, up to the time the Statute of Limitations would run in an analogous case in an action at law, leaving the impression that they would not consider such an application after that time. Certain it is, the authorities sustain this view. The applicant should not be guilty of an unreasonable delay in making his application. 1 Redfield on the law of Railways, 658 ; Moses on Man. 190 ; *The People on the relation of Beach* v. *Seneca Com. Pleas,* 2

Wend. 265 ; *The People on the relation of Phelps* v. *Delaware Com. Pleas*, id. 257.

It appears from the affidavit, or complaint as it is called, that the applicant made out his account and presented it to Potts for him to audit in 1873. This action was commenced in October, 1877. Under the 47th section of the laws of Montana, all actions not specially provided for in said statute upon limitations should be commenced within three years. This would include all actions against officers for the neglect or omission to perform their official duties, save sheriff, coroner and constable. Actions against the latter for such causes, section 43 of said laws provides, must be commenced within two years. The applicant in this case has allowed his right to proceed for the writ of mandamus to rest for about three years at least, perhaps longer, as the complaint is not definite upon this point. Taking the rule in legal actions as a guide, I am satisfied the applicant herein did not proceed in time, and the court below in exercising its judicial discretion properly refused the writ. When courts are called upon to exercise a judicial discretion in allowing claims, they never favor those which are stale.

As to the other points presented in this proceeding, I am of the opinion that a person who is appointed and acts as a messenger to proceed under the warrant of the governor to arrest and return to this Territory a fugitive from justice, although he may not succeed in arresting or returning such fugitive to his proper custodian, is entitled to a reasonable compensation therefor, and that the term *expenses*, as used in section 448 of our Criminal Practice Act, should not be confined to what were the actual and necessary expenses of such messenger, but embrace what would be a just compensation for such services. The statute, however, leaves it to the governor to determine what is a just compensation for the performance of such services. From the averments in the affidavit of the applicant, it would seem that he entertained the notion that the province of the governor in such cases is to ascertain the amount to his satisfaction, of the charges made and expenses incurred by him. This is not the province of the governor under this statute in such cases. He is to ascertain and

be satisfied that the charges made by such messenger are just and reasonable, and when so satisfied, he should audit the same. I am further of the opinion that the governor in such matters acts as an auditing officer and not in an executive capacity, as the executive of the Territory, and that an application for a writ of mandate to compel him to proceed and audit a claim for such services and determine to his satisfaction how much would be just and reasonable, if made in due time, should be entertained. This court, however, could not, upon any statement of facts under the said section 448, dictate to the governor what would be a just and reasonable compensation for such services. The determination of this rests in his discretion.

For the reason that the application was not made within a reasonable time, it is ordered that the judgment of the court below be affirmed with costs.

*Judgment affirmed.*