STATE EX REL. JOHNSON ET AL., APPELLANTS, *v.*
CASE, JUSTICE OF THE PEACE, RESPONDENT.

[Submitted March 8, 1893. Decided July 2, 1894.]

JUSTICE OF THE PEACE—*Jurisdiction to set aside judgment upon verdict.*—A
justice of the peace, who, upon the return of a verdict for plaintiff for the
amount of a note and interest, and for defendant for the costs of the action,
has rendered a judgment in accordance with such verdict immediately, as
required by section 794 of the Code of Civil Procedure, has no jurisdiction
eight days afterwards to set aside such judgment as to the defendant, and to
add to the judgment for plaintiff an attorney's fee and the costs of suit.
(HARWOOD, J., dissenting.)

SAME—*Certiorari.*—Where a justice of the peace exceeds his jurisdiction in set-
ting aside a judgment rendered upon a verdict, and rendering another judg-
ment contrary thereto, such action is reviewable on *certiorari*, as an appeal to
the district court would not afford to the party aggrieved an adequate remedy
in that it would require a trial of the case *de novo*, in which no review of the
action of the justice could be had. (HARWOOD, J., dissenting.)

*Appeal from Fourth Judicial District, Missoula County.*

APPLICATION for writ of *certiorari* to review action of a
justice of the peace in excess of jurisdiction. Judgment dis-
missing the writ was rendered by MARSHALL, J. Reversed.

Statement of the case by the justice delivering the opinion:
This case comes here on an appeal from a judgment of the
district court which dismissed an application for a writ of
*certiorari* against a justice of the peace, and affirmed a judg-
ment of that justice.

The application for a writ of *certiorari* in the district court
shows that on February 6, 1892, Edmund Giggy commenced
an action in the justice's court of J. F. Case against A. P.
Johnson and John H. Bell, the relators in this application,
and appellants herein, and that on February 16th the action
was tried. The cause of action was upon a promissory note.
Judgment was demanded for the amount of the note, interest,
costs, and an attorney fee of twenty-five dollars. The defend-
ants in that case (relators herein) now contend that they
pleaded in that case what they claim was a tender of the
amount of the promissory note, with interest, made before the
commencement of the action. They offered to submit to a
judgment for the amount of the note and interest, without

costs. A jury was demanded in the justice's court, and the cause was tried before such jury upon that issue. The jury found a verdict for the plaintiff for the amount of the note and interest, without costs, and a verdict for the defendants for the costs of the action. The jury were then discharged. On the same day (February 16th) the justice entered judgment in accordance with that verdict. Afterwards, on the 23d of February, the plaintiff made a motion in the justice's court, which he called a "motion to correct the judgment." The motion was, in substance, as follows: Plaintiff moves the court to correct the verdict of the jury, and the judgment rendered by the court upon said verdict, and to tax the costs of said action to the defendants herein, for the reason, etc. This motion was by the justice granted, and, in pursuance thereof, on the 24th of February, the justice entered a judgment against the defendants for the amount of the note, and interests and costs, and also, after hearing proof, as the justice's docket of February 24th recites, for fifty dollars attorney's fee in favor of plaintiff.

So, it appears that the defendants, on the 16th of February, obtained, in pursuance to the verdict of a jury, a judgment in accordance with what they here contend that they claimed; that is, that they should pay the note, with the interest, and that they should not pay the costs of the action. It then further appears that the justice, in effect, on a later day (February 24th), set aside the judgment which he had rendered on the 16th of February in accordance with this verdict, and gave a so-called judgment for the plaintiff for the whole amount, with costs and an attorney's fee of fifty dollars. The defendants thereupon applied to the district court for a writ of *certiorari* to review the action of the justice of the 24th of February; their claim being that he exceeded his jurisdiction in giving the judgment of that date, and that there was no appeal therefrom, nor any plain, speedy, and adequate remedy. (Code Civ. Proc., § 555.) Upon the hearing of the *certiorari* matter in the district court, that court dismissed the writ, and affirmed the judgment of the justice of the peace of February 24th. From that judgment of the district court this appeal is taken.

The questions now before this court are, Did the justice of the peace, in rendering the judgment of February 24th, exceed his jurisdiction? And, if so, was there no appeal from that judgment? And was there no plain, speedy, and adequate remedy other than by *certiorari?*

*Henry C. Stiff*, for Appellants.

*Murray & Musgrave*, and *George W. Reeves*, for Respondent.

DE WITT, J.—This case is in fact an action *ex relatione*, in which the relators are A. P. Johnson and another, and the respondent is J. F. Case, a justice of the peace, although the papers in the court below were entitled *Johnson et al.* v. *Case.* (*Territory* v. *Potts*, 3 Mont. 364.)

Section 794 of the Code of Civil Procedure provides, in reference to justice courts: "Upon a verdict by a jury the justice shall immediately render judgment accordingly." In the case at bar the justice followed this statute; and, in accordance with the verdict of the jury, and on the same day, to wit, February 16th, he entered judgment for the claim and interest against defendants, and judgment for costs against the plaintiff. On motion of plaintiff, on February 24th, the justice undertook to partially set aside the judgment above described, and thereupon enter another judgment. This attempted judgment of February 24th varied from the judgment of February 16th, in that it added to the judgment against defendants an attorney's fee for the plaintiff, and also taxed the costs against the defendants, which was contrary to the verdict of the jury, and contrary to the judgment of February 16th. This was not done upon a new trial. A new trial was not applied for, nor granted, nor had. The action of the justice was simply a setting aside of the verdict of the jury as to costs, and the judgment in accordance therewith, and the entering of another and different judgment as to the costs, with the attorney's fee added to the judgment for plaintiff, without any further or other trial. For convenience in referring to the action of the justice, we will call the judgment of February 16th the first judgment, and the action of the court of February 24th the second judgment. As we understand this case,

all that was sought to be attacked and overthrown by the writ of *certiorari* in the district court was the second judgment. No attack was, or ever has been, made upon the first judgment, except the action of the justice of February 24th. The issue and contention upon the trial on February 16th were solely as to the costs, as defendants admitted their liability upon the demand and interest. It is quite likely that that issue was not properly made, and that the pleadings were such, and defendants' alleged tender was such, that the judgment of February 16th, in favor of defendants for costs, was erroneous. But, upon the application for the writ of *certiorari*, no one complained of the first judgment. The question was whether the justice had jurisdiction to render the second judgment, and to that inquiry, we think, we should address ourselves.

The statute provides that "upon a verdict by a jury, the justice shall immediately render judgment accordingly." (Code Civ. Proc., § 794.). "When the prevailing party is entitled to costs . . . . the justice shall add their amount to the verdict." (Code Civ. Proc., § 799.) As the case was tried to the justice the "prevailing party" was, in effect, the defendants, i. e., the defendants prevailed in the contention. The only contention was as to the costs. In this defendants prevailed, i. e., the verdict was in their favor. The justice rendered judgment in accordance with the verdict, and in favor of defendants for costs. The word "immediately," as used in the statute above, has often been construed by courts. It has sometimes been construed as liberally as to mean twenty-four hours. But we have not observed that it has ever been construed as eight days. Now, if the justice is to immediately render judgment upon the verdict of the jury (§ 794), and if he is to add the costs to the verdict (§ 799), it would seem to be in contemplation that the question of who was to pay costs was something determinable upon the return of the verdict, and the immediate rendering of judgment; that is, we say that the question of, against whom the judgment for costs is to be, seems to be determinable with the general verdict. We do not think that we can be understood as holding that a justice has no jurisdiction or power after judgment to add an omitted item of costs, or cut out an item wrongly and inadvertently

taxed. Such questions we do not understand are now before us, and upon them we express no opinion. What we are considering is the matter of a verdict and judgment upon the question of who shall pay the costs—not what the costs should be, in items. And, the matter of who shall pay the costs being adjudged by a justice in accordance with the verdict of a jury (§ 794), has the justice jurisdiction, eight days afterwards, to set aside that judgment, and readjudge the costs against another party? We understand that to be the question before us.

On February 16th there was a judgment in favor of defendants for their costs. Plaintiff did not attempt an appeal from this judgment. It was rendered by the justice upon the verdict of a jury. (Code Civ. Proc., § 794.) We are of opinion that we should not hold, under the circumstances of this case, that the costs were simply an incident of the judgment in the justice court, and, therefore, that the justice could add them eight days after the trial. Such view was not presented by counsel for the justice, who appeared and argued the case in this court. Whatever may be suggested about costs being incidental to the judgment occurs to us as scarcely applicable to this case, where the costs, instead of being an incident, were in fact the only contention which was tried—improperly tried, perhaps; the issue badly pleaded, probably. But still it was the only contention tried, and therefore seems not quite properly called, in this case, "incidental." The verdict and judgment for costs in favor of defendants was separate and independent, and was not attached to any other judgment. It does not, therefore, seem to be appropriately called "incidental." We are of opinion that the proceeding of the justice in rendering the judgment of February 24th was clearly beyond his jurisdiction. (Code Civ. Proc., § 794; *Winter* v. *Fitzpatrick*, 35 Cal. 269; *Weimmer* v. *Sutherland*, 74 Cal. 343; *Fox* v. *Meacham*, 6 Neb. 530; *Foist* v. *Coppin*, 35 Ind. 471; *Foster* v. *Alden*, 21 Mich. 507; *Stephens* v. *Santee*, 49 N. Y. 35; *Hamill* v. *Bosworth*, 12 R. I. 124; *People* v. *Delaware Common Pleas*, 18 Wend. 558; *Corthell* v. *Mead*, 19 Col. 386.) In the Colorado case last cited it is held that, when a justice enters judgment on a verdict of a jury, his act is simply ministerial, and not judicial. That case further remarks: "The judgment

being entered according to the verdict, the aggrieved party may appeal; but the justice has no authority to render any judgment contrary to the verdict, and, if he does so, such judgment may be regarded as a nullity. Any other doctrine would involve proceedings in justices' courts in troublesome, expensive, and vexatious delays, and would greatly hinder and embarrass the administration of justice. (Freeman on Judgments, § 53 *a;* High on Extraordinary Legal Remedies, §§ 235–42.)"

The attempted judgment of February 24th was therefore void. Then, the question remaining for our consideration is, Can that judgment be reached and overturned upon a writ of *certiorari?* The respondent contends that an appeal lies to the district court from the justice court, from such judgment, and cites *Ducheneau* v. *House,* 4 Utah, 363; *Saunders* v. *Seed Co.,* 6 Utah, 431; *Trustees* v. *Shepherd,* 139 Ill. 114; *Sioux Falls Nat. Bank* v. *McKee* (S. D., Jan. 26, 1892), 50 N. W. Rep. 1057; *Livermore* v. *Campbell,* 52 Cal. 75; *Fox* v. *Nachtsheim,* 3 Wash. 684.) He therefore contends that if an appeal lay from the judgment of the justice of February 24th the *certiorari* was properly dismissed by the district court. (*Hayes* v. *District Court,* 11 Mont. 225.) But let us examine whether, in fact and in substance, there is an appeal which reaches the attempted judgment of February 24th. Anderson's Law Dictionary defines an "appeal" as, "To remove a cause to a higher court for review and retrial." In general terms, an appeal is a resort to an upper court, to review the action of a lower court.

In the justice court in this case there were two records, each of which is called in the argument a "judgment." One was the first judgment, of February 16th; the other was the second or attempted judgment, of February 24th. Of the former, the defendants had no complaint. The latter was their grievance, which they wished to have righted. If the defendants could have appealed from the second judgment, and if they could have had that action of the justice reviewed, and if they could have had the district court decide whether the justice of the peace was right or wrong in his action of February 24th, and if, it appearing he was wrong in that

respect, the district court could have reversed that wrongful action, and have sent the case back with directions to the justice to wipe out the attempted judgment of February 24th, and leave defendants as they ought to have been left by the justice (that is, with the judgment of February 16th standing until it was properly attacked), then, if such could have been the result of the appeal by the defendants from the justice's to the district court, the defendants would have had an appeal in substance as well as in name—an appeal which would have reached the grievance which they claimed to have suffered. But an appeal to the district court would have wrought out no such result as as above suggested. Had the defendants appealed, the district court would never have reviewed the pretended judgment of February 24th. The case would have been tried *de novo.* The attempted judgment of February 24th and the judgment of February 16th would have each been ignored, and the matter would have been tried *de novo* in the district court. There would have been a retrial in that court of the merits of the case. There would not have been a review of the performance of February 24th. The latter, the defendants wanted; the former, they did not. They would therefore get what they did not want, which would be an injury to them, and would be deprived of that which they sought to obtain. They would ask for bread, and receive a stone. (*State* v. *Evans,* 13 Mont. 239.)

If it be suggested that an appeal by defendants from the judgment of February 24th would obtain for them a review of the determination of the question of who should pay the costs of the action in the justice's court, it may be replied that defendants had obtained a judgment in their favor once (February 16th) upon that subject (a judgment which had been set aside by the justice without jurisdiction), and, if there were appealing to do, defendants had the right to look to plaintiff to assume that burden. It is said in the Colorado case, cited above: "Did petitioners have a plain, speedy, and adequate remedy, by the ordinary course of law, for the action of the justice in refusing to enter judgment upon their verdict? It is urged that their remedy was by appeal, but this view is not sustained by sound reason, nor by the weight of authority.

As we have seen, the justice, in assuming to arrest judgment upon the verdict, and in dismissing the case against claimants, acted wholly without authority. Even if the claimants could have appealed from the entry of such orders, such a remedy would not have been adequate. They had tried and won their cause, and were entitled to the fruits of their victory. Why should they be required unnecessarily to assume the expense, trouble, and hazard of another trial? Judgment should have been entered upon the verdict, and then the burden of an appeal, if any had been taken, would have fallen upon the plaintiffs. The taking of an appeal is a matter of some inconvenience and hardship. It involves the giving of a bond, with surety, and the advancement of costs, as well as the hazard of another trial. A remedy, therefore, which required the claimants, rather than the plaintiffs, to take an appeal, was not adequate. Besides, if the judgment had been entered for the claimants, it is not certain that any appeal would have been taken." (*Corthell* v. *Mead*, 19 Col. 386.)

It is said by the supreme court of California, as to another matter, but of kindred nature: "A mandate that the superior court proceed to a hearing of the appeal on the merits, or to a retrial of the issues, would not annul, but simply ignore, the order dismissing the appeal. The order must first be annulled by a direct proceeding; that is, by *certiorari*. Such is the remedy when the court has entered a judgment or made an order in excess of jurisdiction." (*Levy* v. *Superior Court*, 66 Cal. 292.) So, in the case at bar, by an appeal the defendants in the justice court would attack and destroy that which was not to them a grievance, but rather a benefit; that is, the judgment of February 16th. And they would never be able to attack or have reviewed the grievance which they sought to appeal from, and which, in name and in shadow, they would appeal from; that is, the attempted judgment of February 24th. We are satisfied that such an appeal would be wholly unsubstantial. It would not be a review or retrial of the matter complained of. (See definitions of "appeal," *supra*.) Its only characteristic of an appeal would be its name.

It is said in *Sioux Falls Nat. Bank* v. *McKee* (S. Dak., Jan. 26, 1892), 50 N. W. Rep. 1057: "To justify the issuance of the

writ, there must not only appear an excess of jurisdiction, but that there is no appeal or other adequate remedy. If the judgment complained of could have been brought to this court by appeal, and the question of jurisdiction determined in such proceeding, that fact alone would prevent the issuance of the writ. Upon this point the statute could hardly be plainer. The evident design of the statute is to make appeal the ordinary method of bringing cases up for review, and *certiorari* an extraordinary method, to be resorted to only when necessary to save rights which would otherwise be lost."

We are of opinion that the case at bar is just such an one as is suggested in the closing words of that South Dakota case. The *certiorari* before us in this case is necessary "to save rights which would otherwise be lost." It is necessary to save to the defendants in the justice court the right to have the illegal action of the justice on February 24th obliterated and destroyed, and, moreover, to have it destroyed without carrying down in such destruction the judgment of February 16th. Such right of defendants to demolish the illegal judgment of February 24th, and preserve the judgment of February 16th, could not be saved by an appeal on the part of the defendants, and such right could be saved by this writ of *certiorari*. (*Fox* v. *Nachtsheim*, 3 Wash. 684; *Paul* v. *Armstrong*, 1 Nev. 95.)

The result of these views is that we are of opinion that, conceding that an appeal did lie from the justice court to the district court, yet that such an appeal was one in name only, and was not an appeal in substance or in fact, as reaching to the grievance. *Certiorari* was therefore an appropriate remedy against the justice. The judgment of the district court, dismissing the writ of *certiorari* and affirming the judgment of the justice, is reversed, and the case is remanded, with instructions to the district court to sustain the writ of *certiorari*, and, in pursuance thereto, to annul the judgment which the justice of the peace attempted to render and enter on February 24th.

*Reversed.*

PEMBERTON, C. J., concurred in the conclusion.

HARWOOD, J., dissenting.—Viewed in the light of the facts disclosed by the record, it seems to me the foregoing is a

remarkable treatment and determination of this case. The authorities cited and quoted are undoubtedly correct in affirming that a justice of the peace is bound to enter judgment according to the verdict returned by the jury upon the issues involved in a case submitted to a jury. I do not understand that there is a dispute, or a difference of opinion, upon that proposition. Nor do I suppose the learned judge of the district court, whose decision is, by the foregoing opinion, declared erroneous, and ordered reversed, would hesitate a moment to so hold, upon such a point being presented. My impression is, that a reporter preparing the foregoing opinion for publication would note, as his *syllabus*, that " A justice of the peace must enter judgment, in a case tried in his court, according to the verdict of the jury returned on the issues presented; and a judgment entered contrary thereto will be annulled by a higher court on writ of *certiorari*. Judgment of the district court, holding otherwise, reversed." And I presume it would be a matter of some astonishment to those reading the majority opinion, and regarding the case from the impression thereby conveyed, that the learned judge of the district court should have fallen into such palpable error, and a matter of more astonishment that there should be dissension in this court on so plain and simple a proposition, especially in the light of the foregoing exposition. But notwithstanding a *syllabus* to the effect above stated would, as I think, express the impression naturally derived from the foregoing treatment, and state a correct conclusion of law upon a hypothetical proposition of fact, I cannot subscribe thereto as applicable to determine the case at bar, because, on submission of the opinion for concurrence, my examination of the record disclosed what seemed to me a state of facts showing an entirely different case than that manifestly proceeded upon in reaching the conclusion announced. This led to a very thorough canvass and discussion, in the counsels of this court, of the facts disclosed by the record. But to my surprise, not finding any facts reconcilable to the assumptions of the majority opinion, the same was nevertheless adhered to as originally determined upon; and, evidently to support the same in point of fact, a statement of the case has been prefixed thereto, which purports to give the

facts upon which the determination of the majority, reversing the district court, is based. Therein, after briefly setting forth the nature of the proceedings in the justice's court, the review and affirmance thereof on writ of *certiorari* by the district court, and the appeal therefrom to this court, it is stated that "the defendants in that case (relators herein) now contend that they pleaded in that case what they claimed was a tender of the amount of the promissory note, with interest, made before the commencement of the action." The same assumption is. also reiterated in that statement of the case, as follows: "So it appears that defendants, on the 16th of February, obtained, in pursuance of the verdict of the jury, the judgment in accordance with what they here contend that they claimed; that is, that they should pay the note, with interest, and that they should not pay the costs of the action." From this it plainly appears that the majority, according to the statement prefixed to their opinion, proceed not upon what the record shows defendants pleaded in the case,—although the pleadings are entirely in writing, prepared by counsel of the respective parties, and fully set forth in the record,—but they proceed upon the assertion that defendants "now contend that they pleaded in that case what they claimed was a tender," or, as they secondly assert in the statement, "what they here contend they claimed; that is, that they should pay the note, with interest, and that they should not pay the costs of the action."

The taxation of costs is the only thing involved in this case; and the important—the vital—point upon which this decision turns is whether defendants pleaded a tender in the justice's court. Indeed, that is really the only fact stated in the majority statement, outside of the mere mention of the nature of the case and how it came to this court; and that important proposition as to defendants' plea of tender is reiterated in the majority statement of the case. Now, if the record on file in this case showed that defendants pleaded in the justice's court a tender prior to the commencement of the action, and that they followed it up, when the action was brought, by depositing in court the amount due, as required by section 504 of the Code of Civil Procedure in such cases, it would thereby clearly appear that the ruling of the district court was wrong, and

ought to be reversed; and there would not be a moment's dissension on my part from the majority decision to that effect. On the other hand, if the record shows the contrary, the majority of this court proceed upon an hypothesis which contradicts the record, and the decision of the majority is utterly wrong and defenseless, and the district court was right. But if the record, which contains the pleadings, disclose that defendants pleaded facts showing a tender of payment prior to the commencement of the action, why not so state in unequivocal language?

Wherefore is it said in the majority statement that defendants "now" and "here" "contend" that they did something —that defendants pleaded a tender—in a particular wherein the record discloses just what defendants pleaded? That fashion of statement, it seems to me, would appear extraordinary in any statement of facts upon which depended the solemn determination of the rights of litigants, but especially so in respect to pleadings prepared by counselors at law, in writing, which are set forth in the record. Even if the pleadings in the justice's court had been stated orally, the law requires the same to be noted by the justice in his docket (Code Civ. Proc., § 770), and the docket entries are set forth in the record. Herein is the vital point on which the decision ought to and does turn,—the point of contention, and the one in respect to which the record was carefully scrutinized and discussed. And an examination of the record discloses that it does not show either that defendants pleaded in the justice's court a tender of payment prior to the action, or that they followed up any such "contended" tender by deposit in court of the amount admitted to be due, as required by statute in case a tender had been made. (Code Civ. Proc., § 504.)

The majority statement of facts does not come into direct conflict with the record, because that statement, as we have seen, asserts only that defendants "here contend" that they pleaded a tender. Forbearing comment, it is sufficient to bring to view these conditions respecting the treatment of the case in this court to show the point and cause of dissension. I therefore proceed to an examination of the case as shown by the record.

It appears from the proceedings disclosed by the record in

this case that an action was commenced in the justice's court of
J. F. Case, justice of the peace in Missoula county, by Edmund
Giggy, plaintiff, against A. P. Johnson and J. H. Bell, defend-
ants, to enforce payment of a promissory note. The complaint
in the action sets forth the execution and delivery of the promis-
sory note by defendants, whereby they promise to pay B. F.
Buffum $150, with interest at a rate stated, the assignment and
transfer of said note to plaintiff, the nonpayment thereof, that
said note provided for recovery of reasonable attorney's fees in
case of its enforcement by action, and that $25 was a reason-
able fee for the prosecution of this action to enforce payment
thereof, and demands judgment for the amount of the note,
with interest and said attorney's fee and costs of suit. Defend-
ants answered, admitting the execution and delivery of said
note and the indebtedness thereby evidenced, but alleged that
on a certain date, before the commencement of the action, at a
certain place in Missoula county, defendant Johnson (quoting
from the answer) "tendered to plaintiff, in lawful money of
the United States, the full amount then due upon said note,
less the sum of $22.16, then owing and due to Johnson by said
plaintiff, but that plaintiff then and there refused to accept the
same. And defendants further allege that on the 13th of Feb-
ruary, 1892, defendant Johnson recovered judgment in the jus-
tice's court in and for," etc., "in the sum of $22.16, and $24
costs of suit, and that no part of said judgment has been paid;
that said A. P. Johnson is willing, and hereby consents, that
said judgment be applied as a setoff against the demand of
plaintiff. Defendants further allege that they, each of them,
are willing, and now offer, that judgment be entered against
them in this action for the sum of $150, principal of the note
sued upon, with interest thereon from," etc., "to the present
date, without costs, and defendants demand judgment against
plaintiff for their costs herein expended."

This is the answer of defendants, as shown by the record.
There is no denial that the note provided for recovery of rea-
sonable fees for services of plaintiff's attorney in prosecuting
an action to enforce payment thereof, or that $25 was a reason-
able fee for such services. It appears that the justice, on motion
of plaintiff, struck out of said answer the allegations therein

relating to recovery of said judgment against plaintiff by defendant Johnson for $22.16, and $24 costs. As the pleadings then stood, plaintiff alleged, and defendants admitted, the indebtedness represented by said promissory note, that it was due and unpaid, and that plaintiff ought to have judgment (quoting from the answer) "for the sum of $150, principal of the note sued upon, with interest," as stipulated in the note, "to the present date."

The facts alleged as to tender show no legal tender whatever. Defendants' counsel plainly recognize this, for having alleged the facts about Johnson's claim against plaintiff for $22.16 "damages," and tender of payment of the amount due on the note, less that claim for damages, and recovery of judgment against plaintiff by Johnson in the justice's court for that amount of damages—having interpolated all those facts into the case—defendants manifestly do not rely upon them as a legal tender, because they close their answer with an offer to allow judgment for the whole amount of the promissory note, "with interest to the present date." Interest would have stopped at the date of tender, had a legal tender been made. A tender less an amount of damages demanded by the debtor from the creditor would not ordinarily be a good legal tender at all, because the creditor would not be bound to accede to the opinion of the other as to the amount of damages. Even after the demand for damages had been fixed by judgment in the justice's court it is not relied on as an offset; for it is expressly shown in the answer that defendants offered to have judgment entered against them for the full amount of the note, with interest to date of judgment, and the alleged facts as to judgment for damages were stricken out of the answer. Therefore, it left the answer of defendants with the allegation as to tendering payment, less said damages, followed by an offer to allow judgment to be entered against defendants for the full amount of plaintiff's claim, with interest to date, but "without costs." Now, while the answer failed entirely to plead a legal tender, and the majority of this court do not affirm that the facts alleged in the answer constituted a legal tender, but cover the point by setting down in the statement of the case that defendants "here contend" that

they pleaded a tender, still, for the sake of great liberality in viewing defendants' position, I may grant that, in so far as merely offering payment previous to the action, the facts alleged in the answer constituted so much of a tender. Nevertheless this bare offer of payment was insufficient to throw the burden of costs on plaintiff, unless defendants brought the amount due into court, and deposited the same there for plaintiff, according to the requirements of section 504 of the Code of Civil Procedure. It is not pretended that any one ever "contended" that was done. This is a provision of statute which requires that where previous tender is alleged the amount due shall be brought into court for plaintiff. It is reasonable and just, too. In such a case there is absolutely no reason for court proceedings; no reason for summons, trial, or execution, which accrue court costs. The money is laid down in court and, if previous tender is found to have been made, plaintiff takes payment of the debt by taking the money deposited in court without entry of judgment or necessity for execution, and the costs are taxed against him. That is the only way to put the parties on a proper basis to rightfully compel plaintiff to pay the costs of an action. Should defendant be allowed to come into court, and say that upon a certain time he tendered payment of the debt, and then keep the money in his pocket, and say, "I am willing the plaintiff shall take judgment, and get what he can out of it, and hunt me with an execution in the hands of an officer of the law, and collect the judgment, if he can, at great expense, but the plaintiff shall pay the costs in the case"? The statute plainly answers this question in the negative, and the justice of the peace and the district court followed the plain provision of the statute; but the majority of this court overrule them, however, without mentioning the facts shown or the disregarded statute.

Turning to another view of the law, as applied to the facts disclosed by the record, it should be noted that the statute provides that "If the defendant, at any time before trial, offer in writing to allow judgment to be taken against him for a specified sum, the plaintiff may immediately have judgment therefor, with the costs there accrued, but if he do not accept such offer before the trial, and fail to recover in the action a

sum larger than the one mentioned in the offer, he shall not recover any costs accruing after the offer was made, but the offer and failure to accept shall not be given in evidence to affect the recovery otherwise than as to costs." (Code Civ. Proc., § 797.) Defendants offered, as we have seen, to have judgment entered against them for the full amount claimed by plaintiff; so there was not, nor could there be, any dispute or trial as to the amount for which plaintiff should have judgment. But defendants, without having pleaded any tender, or depositing any thing in court, as required by section 504 of the statute in case they "contended" here, as the majority statement asserts that they pleaded a tender prior to the action; and without having any offset, or relying upon any, defendants confessed that plaintiff ought to have judgment for all he asked, and offered to allow judgment to be entered for the full amount demanded, not with costs then accrued, as the statute provides, but attached to their offer a condition that judgment might be entered against them, "without costs," and that plaintiff should pay the costs.

In this attitude defendants stood in court, and demanded a jury trial, as disclosed by the record in this case; and a jury was impaneled, and the constable sent for witnesses, and some sort of a trial ensued, upon the demand of these defendants, whereby costs exceeding $100 accrued, as shown by the record, when in fact there was no issue whatever to try. It certainly did not require a jury to find that plaintiff should recover the amount of his note, "with interest to present date," when that was confessed by the written answer of defendants, nor to try the validity of an alleged offset which, although alleged, was not relied on, and was stricken out and abandoned. Nor was there need of a jury to try the question of a tender which had not been alleged, nor made good by a compliance with the statute if it had been alleged. There was absolutely nothing presented in the case to try. And, observe, the majority of this court do not venture, in the face of the record, to affirm the contrary. Nevertheless, defendants demanded a jury trial; and the upshot of the wrangle before the jury was that a verdict was returned to the effect that plaintiff have judgment for the amount of said note and interest, already confessed, but

added that the costs be taxed against plaintiff. Thereupon, on the 16th of February, the justice entered judgment in favor of plaintiff for recovery of the amount of the note ($150) and interest, according to its terms, but taxed the costs which had accrued (exceeding $100) against plaintiff. Thereafter, on the 24th of the same month, plaintiff's counsel moved the justice to tax the costs of said action against defendants, on the ground that the law required the justice to tax the costs of an action in favor of the party prevailing. (Code Civ. Proc., § 828.) This motion related entirely to the taxation of costs, and did not ask the justice to either set aside or re-enter, or otherwise make any entry touching, the judgment for the principal recovery. The motion is as follows: "Now comes the above-named plaintiff, by his attorneys, and moves the court to correct the verdict of the jury in the above-entitled action, and the judgment herein rendered by the court upon said verdict, and tax the costs of said action to the defendants herein, for the reason that said verdict is contrary to law, and not warranted by the statutes of the state of Montana; and, second, for the reason that said verdict, as returned, in so far as it relates to the costs, is contrary to law, and absolutely void." It is made to appear in the majority statement and opinion that the justice of the peace, "in effect, on a later day (February 24th), set aside the judgment which he had rendered on the 16th of February." The record contains the justice's docket entry made on the 24th, and therein I am unable to find any provision, either in terms or "in effect," setting aside the judgment for the principal recovery in favor of plaintiff, entered on the 16th. That docket entry deals with the motion to tax the costs to defendants, and grants the same, and then orders that plaintiff recover "of defendants the sum of $150, with interest from the date of said note until paid, together with costs of the action." Instead of setting aside the judgment of February 16th, this later docket entry, which followed the first, reaffirms the judgment for the principal recovery, saying that plaintiff should recover the amount demanded and confessed, together with "his costs of this action." Now, had the justice of the peace jurisdiction to tax the costs, as required by law and the

facts appearing in the case, eight days after entry of judgment for recovery of the debt claimed by plaintiff?

When the real point for consideration is brought into view, as disclosed by the record, it is found to relate merely to the taxation of costs, which is a subject generally held to be incidental to the main recovery, and the costs provided by law are to be taxed as the law directs. The statute regulating practice in justices' courts provides that "costs shall be allowed the prevailing party in the justice's court." (Code Civ. Proc., § 828.) But this provision, of course, is to be construed in harmony with section 797, which provides that the defendant may, at any time before the trial, offer, in writing, to allow judgment to be taken against him for a specified sum; and, if no greater sum is recovered in the action, he shall not be liable for the costs accruing after such offer is made. Section 799 provides that, "when the prevailing party is entitled to costs by this chapter, the justice shall add their amount to the verdict." These provisions of statute gave the justice jurisdiction to tax the costs against defendants, when applied to the facts in the case as admitted. The plaintiff prevailed completely in this case, without the necessity of trial or verdict, as the pleadings stood.

I observe with astonishment that in the majority opinion it is asserted that "defendants prevailed." If courts are instituted merely as a place for the propagation of costs on the "contention" of a litigant in some matter outside of the record (without foundation, too, because in this case it was confessed that plaintiff ought to have judgment for all he asked) —if courts are instituted as a place for that purpose defendants prevailed, as the majority opinion is pleased to assert. But if the court is instituted for the purpose, among others, of enforcing delinquent obligations, to give judgment therefor, especially where defendants confess, by solemn pleading in writing, that plaintiff is entitled to all he asks, and to see that the provisions of statute are enforced and observed in such matters, then plaintiff prevailed. But I do not propose to dwell upon such a proposition. If, where a plaintiff brings an action in court, asking for a judgment for the amount of an obligation due, and the defendants, by written answer, confess that plain-

tiff ought to have judgment for the full amount asked, and show no prior tender of payment, nor even pretend to rely thereon by paying the money into court, and there is nothing whatever presented for trial —if, in such a case as that, it is to be asserted that defendants prevailed, I am willing to leave such assertion without comment. The statute above referred to, applied to the facts disclosed by the record, gave the justice the jurisdiction to tax the legal costs of the action to defendants. The justice followed the law, with the exception of taxing one item of cost not authorized by law, which will be noticed below. The district court was right in affirming the proceedings of the justice, except as to the item of cost mentioned.

Moreover, the district court properly dismissed the writ of *certiorari,* whereby the proceedings of the justice of the peace were brought up for review, on the ground that relators had a remedy by appeal, if dissatisfied with the action of the justice in taxing the costs as part of the judgment against them in this court. If so, *certiorari* could not be invoked to review and correct, even if erroneous, said action of the justice in the adjudication in his court. The statute (Code Civ. Proc., § 822) provides that " any party dissatisfied with a judgment rendered in a justice's court may appeal therefrom to the district court of the county at any time within thirty days after the rendition of the judgment." The statute regulating the use of the writ of *certiorari* (Code Civ. Proc., § 555) provides that " the writ shall be granted in all cases when an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction of such tribunal, board, or officer, and there is no appeal, nor, in the judgment of the court, any plain, speedy, and adequate remedy." Relators were evidently dissatisfied as to the costs taxed against them as part of the judgment in the justice's court, resulting from the adjudication of the case therein. The taxation of costs allowed by law belonged to the adjudication, and depended upon the facts shown therein; and in no other way could it be determined by any court whether the justice was right or wrong in taxing the costs against the defendants. It is true, in this particular case, the facts are all shown and admitted by the pleadings, and thereby the propri-

ety of taxing costs against defendants appears by looking at the pleadings. This, however, discloses the facts, without the necessity of the trial of any disputed facts; but it yet remains for the court to apply the law to the facts in determining the case, both as to costs as well as to the principal judgment.

In the case of *State* v. *Evans*, 13 Mont. 239, it was held that the action of the justice there shown could not have been corrected on appeal; hence the jurisdictional question involved in the action of the justice was properly reviewable by a writ of *certiorari*. Why? Because on appeal the appellate court would adjudicate and determine the issues in the case by trial *de novo;* but such trial of the issues involved in the case would not include the review or correction of the irregularities or unwarranted action on the part of the justice as to forfeiting defendant's bail money deposited to guarantee her appearance, which was in excess of the justice's jurisdiction, and was not involved in the issues, either of fact or law, to be determined on appeal, if appeal had been taken. But here, in the present case, it is insisted that relators have an adequate remedy by appeal, because the action of the justice complained of was directly concerned with the adjudication of the case, and depended upon the adjudication and determination thereof, which would also come into adjudication and necessarily be determined by the appellate court on appeal. This seems to be true. The appellate court, on appeal, would determine every thing in dispute involved in the issue, and apply the law to the facts found or admitted. In thus passing judgment on the appeal and trial *de novo*, the appellate court must necessarily also assess costs against the parties subject thereto, according to the requirements of law and the facts shown, as part of the judgment; and by appeal the party dissatisfied with the action of the justice in taxing the costs would clothe the district court with power to determine the question as to who should be subjected to the costs of the case. It cannot be denied that defendants had the right of appeal, and that the action of the justice complained of would thereby have been placed directly within the adjudication of the district court for such determination as the law and the facts demanded. If that be true,

it follows, without question, that *certiorari* would not lie, because of the remedy available by appeal.

The foregoing discussion relates entirely to the question oi taxation of the costs provided by law, as shown by the proceedings in the action, and to the jurisdiction of the justice to tax such costs as directed by statute in favor of the party prevailing in the principal recovery. If the justice of the peace should add to the judgment any sum, under the guise of costs, not authorized by law and the proceedings as legitimate costs in the case, such as taxation of an attorney's fee, where the pleadings showed no foundation therefor, his excessive action in that respect would undoubtedly be subject to correction through the writ of *certiorari*, because such element added to the judgment would be found, on review of the proceedings, to be entirely foreign to the case, and hence in excess of the jurisdiction of the justice —as much so as though he should adjudge any other recovery in no way pertaining to the case presented. There appears in this case such an element, for the return of the justice to the writ of *certiorari* shows that on the 24th of February, when he considered the motion, and determined to assess the costs of the action to defendants, he also, on motion, inquired, by hearing of evidence, as to what would be a reasonable fee for services of plaintiff's attorney in prosecuting the action to enforce collection of said note, and determined that $50 was a reasonable fee for such services, and included that sum in the costs taxed against defendants. As already shown, defendants did not deny the allegation of the complaint that the note provided for the recovery of a reasonable attorney fee in case the obligation was enforced by action at law, nor that $25, as alleged, was a reasonable fee for that service. No foundation appears for the assessment of any further sum in that respect; and such assessment, therefore, is entirely unwarranted, and in excess of the jurisdiction of the justice in the case. I think the district court should have modified the proceedings of the justice by eliminating from the assessment of costs the excessive sum of $25 taxed as attorney fee. This point, however, may not have been brought to the attention of the district court. The case may have been argued in the dis-

trict court wholly upon other points of contention, as it was here. And, with the modification mentioned, the rulings of the justice and of the district court were correct, as plainly appears when the case, as disclosed by the record, is examined and considered.