PUTNAM, Respondent, *v.* PUTNAM, Appellant.

(No. 6,503.)

(Submitted October 3, 1929. Decided December 2, 1929.)

[282 Pac. 855.]

*Messrs. Foot, MacDonald & Black,* for Appellant, sub-
mitted a brief; *Mr. T. H. MacDonald* argued the cause orally.

*Messrs. Harris & Hoyt,* for Respondent, submitted a brief;
*Mr. G. G. Harris* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion
of the court.

This is an action for divorce. Plaintiff's first cause of action
is based upon cruelty; the second upon desertion. Defendant's
answer consists of denials and explanations. She interposed
a cross-complaint, charging plaintiff with desertion, asking for
separate maintenance. The court found for the plaintiff,
granted him a decree of divorce, denied defendant separate
maintenance. Defendant appealed.

The specifications of error are that the court erred in over-
ruling defendant's demurrer to the complaint and each of the
causes thereof, in overruling defendant's objection to the
introduction of any evidence under the complaint, in finding
that the plaintiff left the home on or about the 1st of August,
1926, in finding defendant guilty of extreme cruelty towards
the plaintiff, and in finding that the defendant deserted the
plaintiff.

1. In the first cause of action, after setting forth the mar-
riage of the parties, plaintiff's residence in the state for more
than one year, that the children of the union were of age and
married, plaintiff alleged that for more than five years last
past prior to the commencement of the action defendant had

been guilty of extreme cruelty towards him; that about the month of May, 1925, and at numerous times since then, defendant accused him of harboring, supporting and cohabiting with another woman, "which accusation is false and without any foundation whatever, all of which caused plaintiff great anguish of mind and grievous mental suffering"; that in June, 1926, without cause or justification, she kicked, scratched and slapped him in a vicious manner; that in or about the month of March, 1927, and on numerous occasions since, defendant had accused him of buying an automobile for another woman, which accusations were false; that defendant repeatedly during all of that period and at all times manifested no interest whatever in, and in fact showed an utter disregard of, plaintiff's financial success and welfare, but, on the contrary, aided others in an attempt to deprive plaintiff of property worth $10,000; that defendant repeatedly remarked that she had just as well spend plaintiff's money, because if she did not he would lavish it on other women, all of which was false; that during all of that period defendant humiliated and belittled plaintiff by remarking that he should be working in a ditch where he belonged, and further asserted that he was no good and was crooked and unfaithful to his marriage vows, all of which was wholly false and untrue; that she treated plaintiff with contempt in the presence of others and sought to humiliate him in the presence of his friends; that she accused him of gambling, which was false; that the defendant perpetually nagged, annoyed and abused the plaintiff during said period, and treated him in a cold, abusive and scornful manner, showed a settled aversion and contempt for him, and, by the acts above mentioned, and other acts, and by her conduct and attitude towards him during said period, inflicted grievous mental suffering upon the plaintiff by a course of conduct towards and treatment of him existing and persisted in for more than five years next immediately preceding the commencement of this action, which was justly and reasonably of such a nature and character as to destroy, and had destroyed, the peace of mind and happiness of the plaintiff, and to defeat,

and had defeated, the proper and legitimate objects of marriage, and had rendered a continuance of the marriage relation perpetually unreasonable and intolerable to plaintiff.

Section 5738, Revised Codes of 1921, defines extreme cruelty as "the infliction, or threat of grievous bodily injury, or of bodily injury dangerous to life, or the repeated infliction or threat of bodily injury or personal violence upon the other party by one party to the marriage, or the repeated publication or utterance of false charges against the chastity of the wife by the husband, or the infliction of grievous mental suffering upon the other by one party to the marriage, by a course of conduct towards or treatment of one party to the marriage by the other, existing and persisted in for a period of one year immediately before the commencement of the action for divorce, which justly and reasonably is of such a nature and character as so to destroy the peace of mind and happiness of the injured party, or entirely to defeat the proper and legitimate objects of marriage, or to render the continuance of the married relation between the parties perpetually unreasonable or intolerable to the injured party."

Analyzing this section, it is seen that cruelty may consist of (a) the infliction or threat of grievous bodily injury or of bodily injury dangerous to life, or the repeated infliction or threat of bodily injury or personal violence upon the other party to the marriage; or (b) where the wife is the plaintiff, the repeated publication or utterance of false charges against her chastity by the husband; or (c) the infliction of grievous mental suffering as defined in the statute. We shall refer to division (c) hereafter under the head of "grievous mental suffering."

The repeated publication or utterance of false charges against the chastity of the wife by the husband constitutes a ground for divorce on part of the wife. The reason underlying the statute is apparent. In *Morris* v. *Morris*, 57 Wash. 465, 107 Pac. 186, Mr. Justice Dunbar observed that "one has the faintest conception of human nature who supposes that harsh and cruel treatment or personal indignities are confined

to physical assaults," recognizing the fact that to a sensitive wife continual charges of unchastity may "constitute a cruelty compared with which the most brutal physical assault would be a soothing balm." The statute does not give the husband a right of action upon this ground, but that repeated false, unfounded and malicious accusations by the wife charging the husband with marital infidelity may inflict grievous mental suffering upon him should be clear without the citation of authorities. However, see *MacDonald* v. *MacDonald,* 155 Cal. 665, 25 L. R. A. (n. s.) 45, 102 Pac. 927; *Miller* v. *Miller,* 89 Neb. 239, 34 L. R. A. (n. s.) 360, 131 N. W. 203; *Waldhorn* v. *Waldhorn,* 165 Mich. 130, 130 N. W. 199. In his recitation ▮ of the acts alleged to constitute cruelty, plaintiff did not ɯploy the word "maliciously," although he did set forth that the accusations made by the wife were false and unfounded. But the context necessarily implies that the accusations were made in malice. The word "malice" imports a wish to vex, annoy or injure another person. (Sec. 10713, subd. 4, Rev. Codes 1921.)

The complaint sets forth a recitation of actions by the wife ▮ against the husband which are amply sufficient to satisfy the requirement of the statute respecting the infliction of grievous mental suffering. Among these continuous nagging is alleged. "Continuous nagging of one spouse by the other may constitute cruelty giving grounds for divorce, even though the motives of the offending spouse were good, since nagging from good motives may be just as hurtful as nagging from any other kind of motive." (9 Cal. Jur. 656, citing *Barngrower* v. *Barngrower,* 57 Cal. App. 43, 206 Pac. 461.) But, if impelled by bad motives, nagging may easily come within the scriptural aphorism: "It is better to dwell in a corner of the housetop than with a brawling woman in a wide house." (Proverbs, xxi: 9.)

In *Wilkinson* v. *Wilkinson,* 159 Ga. 332, 125 S. E. 856, 859, Mr. Justice Hill indulges in this rhetorical flight: "From the days of Socrates and Xantippe, men and women have known what is meant by nagging, although philology cannot define it

or legal chemistry resolve it into its elements. Humor cannot soften or wit divert it. Prayers avail nothing, and threats are idle. Soft words but increase its velocity, and harsh ones its violence. Darkness has for it no terrors, and the long hours of the night draw no drapery of the couch around it. * * * It takes the sparkle out of the wine of life, and turns at night into ashes the fruits of the labor of the day.''

The first cause of action upon its face is sufficient.

2. The same matter is set forth in the second cause of action followed by allegations that, by reason of defendant's cruelty towards him, plaintiff was compelled to depart from the family dwelling place more than one year prior to the commencement of the action; that her treatment of him has been such as to render it impossible for him to continue to live with her; that defendant never at any time has sought a reconciliation or attempted to induce the plaintiff to return and resume marital relations.

Wilful desertion is the voluntary separation of one of the married parties from the other with intent to desert. (Sec. 5739, Rev. Codes 1921.) Departure or absence of one party from the family dwelling place because of cruelty or bodily harm from which danger would be reasonably apprehended from the other is not desertion by the absent party, but is desertion by the other party. (Sec. 5740, Id.) Wilful desertion must continue for one year before there is ground for divorce. (Sec. 5749, Id.)

It is argued by counsel for the defendant that cruelty which is the result of the infliction of grievous mental suffering upon the other by one party to the marriage is not such cruelty as is contemplated by section 5740. The basis for this argument is that section 5738 (before amendment) and section 5740 were enacted together, and 5738 did not then include within its provisions grievous mental suffering. In other words, counsel argue that the infliction or threat of grievous bodily injury or of bodily injury dangerous to life or the repeated infliction of bodily injury or personal violence by defendant upon plaintiff, could alone constitute such cruelty as would stamp

the defendant as the deserter. But it must be presumed that, when the legislature amended section 5738, it had section 5740 in mind. The sections are *in pari materia,* relating as they do to the same general subject. In the construction or interpretation of a statute, all Acts relating to the same subject, or having the same general purpose, should be read in connection with it as together constituting one law. (*State* v. *Bowker,* 63 Mont. 1, 205 Pac. 961; 36 Cyc. 1147.) In arriving at the intention of the legislature, it is therefore proper to consider, not only Acts passed at the same session, but also Acts passed at prior and subsequent sessions. (36 Cyc. 1149.)

Bearing in mind these rules, we think it reasonable to declare that the legislature, in amending section 5738, intended that the provisions of section 5740 should apply to section 5738 as amended, and hold that, where the infliction of grievous mental suffering upon one party to the marriage by the other is of the character described in section 5738, it justifies the injured spouse in leaving the family dwelling place and constitutes desertion on the part of the other. If the cruelty alleged would entitle plaintiff to a judicial severance of the marriage ties, then it cannot reasonably be said' that such cruelty would not justify his leaving the marital domicile. If physical violence would produce this result, then grievous mental suffering, its equivalent, would produce it likewise. The guilty party is the deserter in either event.

The second cause of action is sufficient on its face.

3. The assignments of error other than those respecting the sufficiency of the complaint, already disposed of, fairly present the issue whether the judgment may stand. Shorn of circumlocution, two questions are presented: (a) Whether the action on the ground of cruelty was brought in time; (b) whether desertion had continued for one year prior to the commencement of the action.

(a) The original complaint was filed in August, 1927. Plaintiff testified that because of defendant's cruelty he left home on or about August 1, 1926, and never returned. Conceding that his testimony covering the year 1925 and the year

1926 up to August 1 was sufficient in all respects to warrant a finding that he was entitled to a divorce on the ground of cruelty when he left home on August 1, 1926, it cannot be said that the evidence on part of plaintiff shows any act or acts of cruelty after that date. Plaintiff on direct examination did say that after he left home finally he met defendant on the street and asked if she would sign a paper respecting some royalties, to which she said: "You are so crooked I won't sign anything." When this was, the record does not disclose definitely. Plaintiff said it was "back in the summer or fall." Evidently the summer or fall of 1926. He also said: "The attitude of my wife did not change subsequent to the time I left home. She has not since sought a reconciliation; she would not speak to me on the street at the time." Her failure to speak must refer to the time he left home. On cross-examination he said, respecting his wife's treatment of him: "This conduct of nagging and faultfinding continued from about the time of my business difficulties with the Doneys. It continued from that time on until I left home; continued until August 1, 1926, until I left home. After that time there was nothing more of this kind because I never talked to her. I never talked to her after August, 1926. She didn't talk to me." He had not made any effort toward a reconciliation.

"It cannot be unfair to this plaintiff to deal with his case ▇ from the standpoint of his own statements." (*Casey* v. *Northern Pac. Ry. Co.*, 60 Mont. 56, 198 Pac. 141; *Wilson* v. *Blair*, 65 Mont. 155, 27 A. L. R. 1235, 211 Pac. 289.) "If a person testify in his own behalf, and there are material conflicts and contradictions in his testimony, he is not entitled to recover if he be the plaintiff, unless that portion of his testimony which is least favorable to his contention is of such a character as to authorize a recovery in his behalf." (*Atlanta Railway & Power Co.* v. *Owens*, 119 Ga. 833, 47 S. E. 213, 214, quoted in *Wilson* v. *Blair*, supra.)

Taking plaintiff at his word that he left his home on or about the 1st of August, 1926, and bearing in mind the fact that he filed his complaint a year or more later, we are con-

fronted with the argument of counsel for defendant that upon plaintiff's own showing he is not entitled to a divorce upon the ground of cruelty. We think this position must be sustained.

The statute says that the extreme cruelty upon which plaintiff relies is "the infliction of grievous mental suffering by a course of conduct towards or treatment of one party to the marriage by the other existing and persisted in for a period of one year immediately before the commencement of the action for a divorce." The lawmakers were not content to say "existing and persisted in for a period of one year *before* the commencement of the action," but said *"immediately before."* The word "immediately" has been variously defined by the courts. (See 31 C. J. 247–250; Words and Phrases, First, Second and Third Series; *State ex rel. Johnson* v. *Case*, 14 Mont. 520, 37 Pac. 95.) It has or has not a precise meaning according to its grammatical or other connections. As used in the statute, supra, where it relates to time, it has an elastic rather than a precise meaning. Taking the liberal view, it means, when referring to the doing of an act, as soon as the act can with reasonable diligence be performed (*State* v. *Bonsfield*, 24 Neb. 517, 39 N. W. 427), with due diligence under the circumstances of the particular case, and without unnecessary or unreasonable delay (*Remington* v. *Fidelity & Deposit Co.*, 27 Wash. 429, 67 Pac. 989), within a reasonable time, with due diligence, under the circumstances of the particular case, and without unnecessary delay (*Ex parte Menner*, (Okl. Cr. App.) 250 Pac. 541; 4 Words and Phrases, Third Series, p. 65). Viewing the word in the phrase, "immediately before the commencement of the action for divorce," the statute evidently means that the action must be commenced within a reasonable time, under the attending circumstances, and without unnecessary delay, after the right of action accrues and while it is still existing.

To entitle the suitor to a divorce, the course of conduct or treatment must have existed and have been persisted in for a period of at least one year before the right of action is com-

plete. The fundamental idea is that, if one spouse has inflicted grievous mental suffering upon the other for the period of a year (or longer as a matter of course), the injured spouse is entitled to have an end put to the marriage. The statutory words necessarily imply continuity. The conduct or treatment which goes to make up cruelty must have existed and have been persisted in to and including the period "immediately before the commencement of the action." If the conduct or treatment has ceased before that time, it has not existed or been persisted in within the statutory requirement. It clearly was the intention of the legislature in creating this additional ground for divorce—cruelty as the result of grievous mental suffering—to compel the injured spouse, if he would avail himself of the right, to exercise it with diligence, thus bringing to an end an intolerable situation. If the injured spouse sees fit to endure the continuance of the cruelty for a longer period than the statute prescribes before he brings action for divorce that is his affair. But if the course of conduct which constitutes the cruelty, through his act or otherwise, ceases for so long a period that it cannot reasonably be said that it was existing and persisted in "immediately before the commencement of the action for divorce," the action cannot be maintained. Whether the words "immediately before" are elastic enough, because of circumstances over which the plaintiff has no control, or which will excuse him, to permit the plaintiff to delay the commencement of his action for weeks, or even for months, we are not now called upon to determine. (Compare *Hall* v. *Hurd*, 40 Kan. 740, 21 Pac. 585; *City of De Soto* v. *Merciel*, 53 Mo. App. 57; *O'Brien* v. *Oswald*, 45 Minn. 59, 47 N. W. 316; *McVitty* v. *Flentge*, 34 Cal. App. 781, 169 Pac. 666.) It is enough to say that where, as here, in the absence of explanatory and excusatory facts, it appears that plaintiff has failed to commence his suit for divorce within a reasonable time, which implies without unnecessary delay, after his cause of action is complete, he may not maintain the action. Without reason or excuse, so far as this record shows, plaintiff, according to his own testimony, delayed

bringing action for a year or more after defendant's course of conduct towards and treatment of him had ceased. If we take the defendant's testimony that he did not leave home until February, 1927, plaintiff is in no better position.

The legislature used the word "immediately" designedly, ▪ and must be presumed to have known its legal effect. The intention of the lawmakers seems plain. To find out the intention of the law is the object of all interpretation (Lewis' Sutherland on Statutory Construction, 2d ed., sec. 364; Black on Interpretation of Laws, sec. 4), and, having found that intention, it is the duty of the courts so to declare. The courts must declare the law as they find it (*Chmielewska* v. *Butte & Superior Min. Co.*, 81 Mont. 36, 261 Pac. 616; *State ex rel. Federal Land Bank* v. *Hays, ante,* p. 54, 282 Pac. 32).

(b) In order to prevail in the action on the ground of de- ▪ sertion, it was necessary for plaintiff to prove by a preponderance of the evidence that, because of his wife's cruelties, he was driven from home on or about the first day of August, 1926, and he so testified. Defendant testified that plaintiff lived at home between August 1, 1926, and February, 1927; "he slept with me during all that time." Two daughters of the couple testified that plaintiff did not leave home until February, 1927; their testimony, fortified as it is with recitals of incidental circumstances, seems strong. Be that as it may, the court found "that the evidence is just as strong that plaintiff left on August 1, 1926, as that he did in February, 1927." The finding on this vital issue is therefore indecisive—in equilibrium. The party holding the affirmative of the issue must produce evidence to prove it. (Sec. 10616, Rev. Codes 1921.) In civil actions where the evidence is conflicting, judgment must go in favor of the party who has the affirmative of the issue, provided he produces in favor of that issue a preponderance of the evidence. (Sec. 10672, subd. 5, Rev. Codes, 1921; *Flaherty* v. *Butte Elec. Ry. Co.*, 42 Mont. 89, 111 Pac. 348.) Where the evidence as to any fact essential to plaintiff's right of recovery, and as to which the

burden rests upon him, is evenly balanced, or in equilibrium, judgment must go for the defendant. (10 R. C. L. 896.)

Judgment on the second cause of action, as well as upon the first, should have gone for the defendant.

3. The court was right in holding against defendant upon her cross-complaint and counterclaim. (*Albrecht* v. *Albrecht*, 83 Mont. 37, 269 Pac. 158.)

The judgment is reversed, with direction to the district court of Toole county to enter an order dismissing the action.

ASSOCIATE JUSTICES MATTHEWS, GALEN, FORD and ANGSTMAN concur.