WALDHORN *v.* WALDHORN.

1. DIVORCE—CRUELTY—EVIDENCE.
A decree of divorce in favor of the husband is justified by evidence that the wife called him opprobrious names, accused him of associating in an improper manner with other women, and that she refused to cohabit with him because she disliked him.

2. EQUITY—HEARING—PRACTICE.

No abuse of the court's discretion appears from a refusal to open a divorce case, after the testimony had been closed, and the parties had substantially agreed upon the alimony, upon defendant's offer and request at a later date to produce further witnesses on that question, no showing being made as to the nature of their testimony.

Appeal from Wayne; Donovan, J. Submitted February 23, 1911. (Docket No. 37.) Decided March 13, 1911.

Bill by Samuel Waldhorn against Anna Waldhorn for divorce. From a decree for complainant, defendant appeals. Affirmed.

*Frank Bennett,* for appellant.

*Friedman & Smilansky,* for appellee.

MOORE, J. This is a suit for divorce. From a decree in favor of complainant, defendant appeals. The complainant filed his bill of complaint charging the defendant with extreme cruelty. The defendant filed an answer denying all the charges of extreme cruelty, and also filed a cross-bill therein, charging the complainant with extreme cruelty toward her, and also charging the complainant with nonsupport. Defendant prayed for a decree of separate maintenance. The case was heard in open court. Before entering upon the proofs, the following occurred:

"*Messrs. Friedman & Smilansky,* solicitors for complainant. *Frank Bennett,* solicitor for defendant.

"*The Court:* What is the contest about, divorce, alimony, or children?

"*Mr. Friedman:* We filed a bill, and they file an answer asking for separate maintenance.

"*The Court:* Any children?

"*Mr. Friedman:* One about 14, and one 20, with her.

"*The Court:* Is there any contest about alimony?

"*Mr. Friedman:* I do not think there will be any. He has been paying her $2.50 per week."

This statement of counsel was not challenged. A number of witnesses were sworn on the part of the complainant, among them the complainant himself. He was cross-examined as to the character and extent of his business. In his cross-examination he testified:

"I would be satisfied if I made $600 a year. * * * I am satisfied if I get $6 a week."

The record shows the following:

"The court, solicitors for both parties, and complainant waited for an hour and a half after complainant had closed his case before the defendant and her witnesses appeared."

The defendant was sworn in her own behalf. In her testimony the following occurred:

"*Q.* Why did you file a bill against him? Do you want to live with him?
"*A.* I got out of the house without a penny, and I had no means to support myself, and I want him to give me a dollar or two a week to support me. I have no relatives or friends here."

Other witnesses were sworn on the part of defendant, some of whom gave testimony as to the character and extent of the business of complainant. The trial disclosed that the youngest boy was living with his father, and the oldest boy, who was earning $9 a week, was living with his mother. After the witnesses offered by defendant were examined, the following occurred:

"*The Court:* Read me the charges she makes.
"(*Mr. Friedman* reads from answer.)
"*The Court:* If you have no other witnesses, heard and submitted, I wish you would agree on your alimony.
"(Adjourned.)"

No other suggestion was then made that defendant had other witnesses or desired to offer more testimony. On June 20, 1910, the record discloses the following:

"Mr. Bennett, solicitor for defendant, made application to the court to hear further testimony as to alimony.

The court thereupon handed to Mr. Bennett the following note:

"'Mr. Bennett—I will be too busy to hear more proof today or tomorrow. Suppose I make it $3.00 a week till further order of the court.'

"No previous notice had been given to complainant or his counsel of defendant's intention to hear further testimony as to alimony on that day. The motion to hear testimony as to alimony was made in open court in the presence of complainant's counsel who had appeared in court on that day for the purpose of having decree signed in this matter, of which due notice had previously been given to defendant's counsel.

"*Mr. Bennett:* The defendant objects to the signing or granting of a decree in this case, on the ground that the testimony and evidence here are not sufficient for the purpose of granting a decree. The question of the alimony coming up to be heard before the court on the 20th day of June, 1910, the defendant deems is insufficient for her support. * * *

"*Mr. Bennett:* We object to the entering of the order for $3 a week. It is insufficient for her support, and also object to the signing of the decree at all, that the testimony is not sufficient for the granting of a decree, that the charges in the bill of complaint have not been proven. And we also object to the curtailing of the proof offered in behalf of the defendant in support of her bill for separate maintenance.

"Now, then, if your honor please, I think, with reference to the hearing of proof today, I think I have that in here.

"*The Court:* I could not hear it today. I could not hear it tomorrow, and you have had your hearing in court once.

"*Mr. Mistersky:* We waited a half a day for him to come in with his witnesses, and then he closed his case."

No suggestion was made that something had been omitted or as to the nature of the proof defendant desired to offer.

Two questions are presented by counsel: *First*, that a decree of divorce ought not to have been granted upon the merits; *second*, that other proof ought to have been taken upon the question of permanent alimony, and that the

alimony ought to have been made larger. We consider the first of these questions. Counsel say (we quote from the brief):

"The grievances, whether mental or physical, must be of the most aggravated nature in order to justify a divorce. *Cooper* v. *Cooper*, 17 Mich. 205 (97 Am. Dec. 182). It is extremely doubtful whether neglect to look after one's household affairs, and long-continued absence from the house without cause, constitute in any case, on the wife's part, that extreme cruelty which the statute contemplates as a ground for divorce. *Bennett* v. *Bennett*, 24 Mich. 482."

We think counsel misapprehend the rule. There was an abundance of testimony to the effect that defendant continually called complainant opprobrious names and accused him with improperly associating with other women, and that for a number of years she refused to cohabit with him because she had not liked him from the time of her marriage. This testimony, if believed, justified the decree of divorce under the following authorities: *Whitmore* v. *Whitmore*, 49 Mich. 417 (13 N. W. 800); *Whitaker* v. *Whitaker*, 111 Mich. 202 (69 N. W. 1151); *Donaldson* v. *Donaldson*, 134 Mich. 289 (96 N. W. 448); *Campbell* v. *Campbell*, 149 Mich. 147 (112 N. W. 481, 119 Am. St. Rep. 660); *Delor* v. *Delor*, 159 Mich. 624 (124 N. W. 544); *Kraft* v. *Kraft*, 160 Mich. 654 (125 N. W. 693). It is true the defendant denied the testimony offered by the complainant, but the judge heard and saw the witnesses. See *Donaldson* v. *Donaldson*, *supra*. An examination of the record satisfies us he did not err in his conclusions.

*Second.* Did the court err in not hearing further testimony upon the question of alimony? It is clear from the record that the judge was given to understand at the outset that there would be no serious contest as to the alimony. An examination of the cross-bill and answer thereto shows the respective parties gave to the court therein their version of the earning capacity and of the

business of the complainant.   The record discloses that upon the hearing court and counsel were compelled to wait an hour and a half for defendant and her witnesses. It also shows that after her witnesses were sworn the court suggested that, if defendant had no other witnesses, the case would be regarded as heard and submitted, and that no other witnesses were then offered.   We have already referred to the earning capacity of the oldest boy who lives with his mother, and other conditions shown by the record.   We do not think it can be said on this record that the court abused his discretion in not reopening the case.

The decree is affirmed.

BIRD, HOOKER, BROOKE, and STONE, JJ., concurred.