WHEELER v. WHEELER.

DIVORCE—EXTREME CRUELTY—EVIDENCE—SUFFICIENCY.
Evidence *held*, sufficient to sustain a decree in plaintiff's favor, on a bill by a husband for a divorce on the ground of extreme cruelty.

Appeal from Wayne; Codd, J. Submitted April 5, 1917. (Docket No. 49.) Decided May 31, 1917.

Bill by James D. Wheeler against Martha Wheeler for a divorce. From a decree for plaintiff, defendant appeals. Affirmed.

*Louis J. Colombo,* for complainant.

*Harold McIntyre,* for defendant.

MOORE, J. From a decree of divorce in favor of the plaintiff the case is brought here by appeal. The important question is: Does the record show plaintiff is entitled to a decree of divorce? There are three children living, the youngest of whom is more than 14 years of age. No property rights are involved as they have been adjusted. The bill was filed upon the ground of extreme cruelty. The defendant put in an answer in the nature of a cross-bill in which is the following averment:

"This defendant further alleges that said complainant has grown cold toward her; that his treatment of her has become cold and distant; that he frequently comes home in an intoxicated condition, and that on different occasions he has laid violent hands upon her person, pulling and yanking her violently around by the arm, and has on said occasions threatened to do her severe bodily harm. This defendant further alleges that she has good reasons to believe, and alleges the fact to be, that he is paying undue attentions to other females in the city of Detroit, and that he is having improper and indecent relations with them, all of which facts this defendant is ready and willing to prove upon the trial of this cause."

She prayed for a divorce. Before a decision was rendered the defendant withdrew her request for a decree under the cross-bill. After hearing all the testimony, the judge withheld a decision for some months, in the hope that because of the children the parties might become reconciled. Later, after some supplementary testimony, he granted the decree from which an appeal is taken.

In support of the averments of her cross-bill the defendant produced as a witness her brother, a young man 26 years old. The judge expressed himself as follows:

"It is my belief that the complainant in this case is a respectable citizen of this community. There has been an attempt on the part of the defendant to blacken his character. It is stated that on two or three occasions he was under the influence of liquor, and I am satisfied from the uncontradicted testimony that this habit, if it was ever a habit, has been eradicated, and that he is not addicted to the use of intoxicating liquors, and cannot come under the name of a person so addicted to the use of intoxicating liquors as to warrant a divorce being granted for that cause.

"The testimony of the witness Williamson, from his appearance upon the stand, is utterly unreliable. The man is a self-confessed libertine, and it is my judgment that he has deliberately perjured himself in the testimony that he gave with regard to occurrences in these houses of assignation and ill-fame. I believe the testimony of the plaintiff in this respect. As I stated, I come to these conclusions from the appearance of these witnesses upon the stand—from the appearance of the complainant. I also consider the appearance of Williamson upon the stand. He appears, and under his testimony I believe him to be, a man of no character; he is a man who confessedly would consent to be supported by a white woman of the lowest character for a considerable time. He is a libertine, and has been for years, and was at the time he says that he saw this complainant in houses of ill-fame. Such testimony is unworthy of belief in the hands of any court. I do not know whether it is possible for a criminal charge to be made against Williamson, but I think it should be, because I am myself becoming thoroughly disgusted with the reckless swearing given by these men. This man Williamson should be taught a lesson, that he cannot perpetrate such perjury and give such testimony as this again. The fact that he has never told this until he came into this court—if this was true, it might be corroborated. His appearance, his manner, his own concession as to his character, prevents the court from believing what he said."

The plaintiff in the most positive terms denied the testimony of Mr. Williamson, and testified that the only times he had visited sporting houses was when

he was called there in pursuit of his business of delivering coal, and calling for and delivering trunks as an expressman. Plaintiff testified in part:

"She got after me one night; said she put in an application for a divorce. She tried to aggravate me. * * * She kept quarreling and nagging me. * * * She denied that there was any mortgage, and refused to let me go ahead on this business deal. She was nagging me right along after that. * * * She took all the papers in my office, receipts and deeds of the place; deeds of the place in Virginia and insurance papers. * * * After I came from my vacation last summer she would not cook for me. I would get my own breakfast. * * * Sometimes I would go home and get my own supper. She would come in at 10, 11, and 12 o'clock. This happened for six months before I filed my bill. * * * Nagging, nagging, nagging. She called me a dirty, nasty nigger, nothing but a dirty liar and a fool."

He testified that she threatened to poison him, and that he was afraid that she would do so, and that she insisted upon sleeping with her feet to his face, and that for a long time before they separated defendant refused to have wifely relations with him. The last statement she denies. Defendant also denied that she had ever threatened to poison plaintiff, but testified in part:

"I remember we had some trouble when we came to mortgage the house. * * * I am talking about the mortgage on 336 Champlain street. I read it and asked him for the papers. * * * I took it to Lawyer Kelly. * * * I started my divorce several years ago against him, because 'he had this notice sent to me, that the property was to be turned in for a mortgage. Mr. Hartenstein sent it. Mr. Wheeler could have kept the payments up in the mortgage, and I filed my bill for divorce because they sent him that notice.

"*The Court:* Was that the only reason?

"*A.* That was the only reason.

"*The Court:* That is the only reason you started that bill for divorce?
"*A.* Yes."

We have already called attention to the averment in the cross-bill and the testimony in support thereof. An opinion written by Justice STONE reads in part as follows:

"The trial court had the advantage of having seen and heard the witnesses testify. In some matters charged there is a sharp conflict in the testimony, which cannot be harmonized. As was said by Justice MOORE in *Donaldson* v. *Donaldson,* 134 Mich. 291 (96 N. W. 449):

"'There are many aids possessed by the judge who hears the oral testimony, in deciding who of the witnesses are truthful, that do not get upon the printed page.'

"While it is the duty of this court to exercise its independent judgment in such cases, yet where our conclusion accords with that of the circuit judge, and in view of the presumption favoring his conclusion on a question of fact, where he has had the opportunity above referred to, which is denied us upon appeal, we think that we should treat the complainant's case as made out by the proofs in this case." *Vollrath* v. *Vollrath,* 163 Mich. 303 (128 N. W. 190).

In a case where the charge was extreme cruelty the court said:

"There was an abundance of testimony to the effect that defendant continually called complainant opprobrious names and accused him with improperly associating with other women, and that for a number of years she refused to cohabit with him because she had not liked him from the time of her marriage. This testimony, if believed, justified the decree of divorce. * * * It is true the defendant denied the testimony offered by the complainant, but the judge heard and saw the witnesses. See *Donaldson* v. *Donaldson,* 134 Mich. 291 (96 N. W. 449). An examination of the record satisfies us he did not err in his con-

clusions." *Waldhorn* v. *Waldhorn,* 165 Mich. 134 (130 N. W. 199).

See, also, *Horning* v. *Horning,* 162 Mich. 133 (127 N. W. 275) ; *McCue* v. *McCue,* 191 Mich. 1 (157 N. W. 369), and *Cole* v. *Cole,* 193 Mich. 655 (160 N. W. 419).

In the case before us the testimony was contradictory, but the fact that defendant previously commenced a divorce proceeding simply because she had received notice of the foreclosure of a mortgage, and the further fact that she charged plaintiff in her cross-bill with improper relations with other women, and in support thereof offered the testimony of her brother, which is so improbable that, after a careful reading of it, we think the trial judge properly characterized it. She also charged him with personal violence, when her testimony showed that the only act, which plaintiff denied, which could be so considered, occurred a long time before the parties separated. All these facts are illuminating in considering the probabilities of the contradictory testimony.

The record warrants the decree rendered in the court below, and it is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred.