MORTON, Respondent, *v.* MOONEY et al., Appellants.

(No. 7,219.)

(Submitted April 27, 1934. Decided May 11, 1934.)

[33 Pac. (2d) 262.]

(1)

*Mr. R. F. Gaines*, for Appellants, submitted a brief and argued the cause orally.

*Mr. M. J. Doepker* and *Mr. William B. Frame,* for Re-spondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendants, Albert S. Mooney, Jr., and Butte Aircraft Corporation, have appealed from a judgment awarding the plaintiff damages for personal injuries sustained, and the wrecking of a Ford coupe, when the car in which plaintiff was riding ran into the rear end of a Ford truck owned and operated in the defendant company's business.

The accident occurred on January 2, 1932, on the Harrison Boulevard, the main highway leading south from Butte, near the Butte airport and the home of defendant Mooney. At the time of the accident, mid-forenoon, the weather was very cold but the air was clear and visibility good, except that from a point a short distance north of the road leading from the Mooney house to a point approximately 600 feet farther north a dense fog bank or cloud had settled down upon the highway.

Morton, with one Ralph Olson, drove from Butte through the fog bank and on a distance of six-tenths of a mile, to the Five Mile House, where they turned the car and started back for Butte, the round trip consuming about five minutes until they again entered the fog bank. During this light period Mooney, assisted by two employees of the Aircraft Corporation and by the use of the truck, had moved Mooney's sedan, which had been out all night and would not start, from behind the house out on to the highway and into the fog bank. The highway is surfaced to a width of twenty-four feet, of which fourteen to sixteen feet in the center had been cleared of snow; eight to ten feet of "black surface" was disclosed, with from three to four feet of

packed snow on each side flanked by snow banks, approximately two and one-half feet deep.

The plaintiff testified that, after entering the fog bank, he was driving about fifteen miles per hour, and that "I could see possibly twenty and twenty-three feet ahead of me." Later he stated, "I say my visibility was good for twenty feet." He testified that he suddenly saw what he took to be the back of a car twenty feet ahead of him, and "in just a split second this dense fog arose in front of me and I whirled the car to the left, and just about five feet ahead of me was the point of contact; the body of the car which I did not see was out in the fog."

The grounds of negligence alleged are that the defendants stalled their cars on the highway and permitted them to remain at an angle across the entire width of the travelable portion thereof, failed to warn oncoming travelers of the blocking of the way or place a lookout for that purpose, and left the engine of the truck idling so that the exhaust added to the density of the fog and obscured the rear end of the truck.

The conflict in the evidence as to the cars being stationary or in motion may properly be resolved in favor of the plaintiff, for, as the fog bank was but approximately 600 feet in length, if the cars were moving ahead at the rate of ten or fifteen miles per hour, as contended by the defendants, and had disappeared in the fog by the time the plaintiff turned at the Five Mile House, they would have been beyond the fog bank before the plaintiff entered it. It must be remembered, however, that the plaintiff was but five minutes in driving from the fog bank to the Five Mile House, turning and returning to enter the fog, and consequently the period during which he was driving north and could have seen a car on the road south of the fog bank, was less than two and one-half minutes. On the other hand, as the cars were not in sight at the time Morton passed the Mooney house going south, Mooney and his helpers had less than three minutes in which to push the sedan from the rear of

the Mooney house out on to the highway, a feat accomplished with some difficulty and slowly—as one of the helpers was pushing on foot—and then proceed several hundred feet along the highway. If the cars were stalled, it was for but a short period of time,—at most something in the neighborhood of two minutes.

There is no showing of lack of diligence in removing the cars from the road, nor, in the circumstances, can it be said that, in that brief space of time, it was negligent to fail to place a lookout behind the cars; there were but two men with them; the third, after pushing on foot in aid of the truck, turned back toward the Mooney house when the cars got on to the highway. Complaint is made that this third man should have warned plaintiff as he approached, but, if the cars were stalled in the fog, that fact was as much unknown to him as to Morton.

There is in the record no suggestion of any law, rule or regulation against stopping a car on the highway under consideration. While motion is the general law of the road, in the absence of any governmental prohibition or restriction, the mere stopping of an automobile on a public highway does not constitute negligence so as to render one liable for injuries flowing from collision with it by any vehicle. (1 Blashfield's Ency. of Auto Law, 556; 42 C. J. 1006.) The right to stop when the occasion demands is an incident to the right to travel. (*Silvey* v. *Harm,* 120 Cal. App. 561, 8 Pac. (2d) 570.) Of course, if a car becomes disabled, the motorist should employ due diligence to remove it from the highway within a reasonable time, but in the absence of any showing of lack of diligence, the mere fact that a disabled car is standing on the highway does not constitute actionable negligence. (*Scoville* v. *Clear Lake Bakery,* 213 Iowa, 534, 239 N. W. 110; 42 C. J. 1041; *Albertson* v. *Ansbacher,* 102 Misc. 527, 169 N. Y. Supp. 188.)

No possible negligence can be predicated upon the showing made to the effect that the cars were momentarily stationary because of disability of the sedan. In order to warrant the

verdict and judgment, therefore, the record must contain substantial credible evidence from which the jury could reasonably say that the truck was on the wrong, or the left-hand, side of the road.

Using a map to scale and toy automobiles of like scale, the plaintiff, who did not see the defendants' cars prior to the accident, attempted to reconstruct the scene just prior to, and at the moment of, the impact, which he describes as "what I discovered when I came into this fog bank"; he said: "I have placed what I indicate as the Studebaker with the right front wheel up near the pile of heavy snow on the east side of the highway and the right rear wheel over on the black top; * * * immediately back of that I have placed the Ford truck in a straight line with the Studebaker, with the left rear wheel * * * extending into the section of the packed snow on the west side of the highway." Thus situated, the cars would be heading northeast, their right sides forming an acute angle with the snow bank on the east side of the highway, while the plaintiff, approaching from the south on the right side of the road would be paralleling that snow bank, coming into the acute angle.

Plaintiff testified that he was driving on the right side of the highway when he suddenly saw, twenty feet ahead of him, what he took to be the rear of a car but was in reality the cab of the truck, the body of which was obscured by the fog, augmented by the vapors from the exhaust of the truck. The object which he saw appeared to be in the center of the road, and he swung his car sharply to the left, intending to pass behind it. At the angle at which the truck stood, its right rear corner was within ten to twelve feet of the front of plaintiff's car when he turned to the left. Plaintiff's version of what then happened is "I cut across this truck and smashed the right side of the Ford and hit this truck in the center of the back." This statement might be taken to mean that the coupe struck the center of the back part,—the truck body; the center of the right side; but plaintiff made it plain that he meant that he struck the truck directly from the rear by testi-

fying: "As I hit the rear end of the truck the three cars were practically in a line and I was on the west side of the highway." That the cars were practically in a line and the coupe ran into the truck directly from the rear is beyond question. As the plaintiff testified, the coupe was struck "below the radiator cap right across the lights"; it crumpled up so that "it looked like an accordion"; the truck was driven ahead into the sedan and wrecked. After the accident, the sedan and truck were in much the same position as plaintiff testified they were as he drove up to them. Plaintiff testified that "after the accident the truck was pushed to the west side of the road and the sedan and coupe were off on the *east* side of the road."

Visualizing the physical facts, it is impossible to credit plaintiff's theory that the sedan and truck were standing at an angle across the entire travelable portion of the highway. Had they been in that position when plaintiff's car swung sharply to the left, the coupe would have been headed in, more or less, the opposite direction from that in which the truck was facing, and the truck would have been driven back and sidewise instead of ahead, and the coupe would not have been damaged equally on both sides "as from a straight hit." In order to get the three cars "practically in a line" at the moment of impact, plaintiff would have had to turn first left then right, in the manner of taking an "S curve" on the road, but it would have been impossible for him to have done this, as there could not possibly have been room for his car between the rear of the truck and the deep snow bank from which, according to his own proof, the rear wheel of the truck was but two or three feet distant. Again, it is hardly conceivable that, if the coupe made a "square hit" from the extreme west side of the road, after the accident it would be "off on the east side of the road."

On the other hand, if the sedan and truck were on the right side of the highway, whether stationary or moving slowly ahead, the accident and the position of the cars thereafter are reasonably explainable. The plaintiff did not see the cab of

the truck until he was within twenty feet of it, when he applied the brakes and swung to the left. Traveling at the rate of fifteen miles per hour, the coupe was covering twenty-two feet per second; the truck body extended "five feet and eight or nine inches" back of the cab. Had Morton's reaction been instantaneous he had but his "split second," a little over a half of a second, within which to change the direction of his car; the car would have hardly started to respond to the steering-wheel at the moment of impact. Thus striking the center of the rear end of the truck at the moment the coupe started to turn left and driving the truck into the sedan, the truck, being without chains, would naturally skid to the left on the slippery pavement, and would reasonably be found in its position after the accident. The coupe, being struck squarely across the lights and below the radiator cap in such manner and with such force as to fold it up "like an accordion," would naturally remain stationary or rebound and remain "on the east side of the road."

It is true that where the record presents a conflict in the evidence, resolved by the jury in favor of the plaintiff, the action of the jury precludes this court from disturbing the verdict (*Burns* v. *Eminger*, 81 Mont. 79, 261 Pac. 613; *Pierce* v. *Safeway Stores*, 93 Mont. 560, 20 Pac. (2d) 253; *Wise* v. *Stagg*, 94 Mont. 321, 22 Pac. (2d) 308), but this is true only when there is substantial evidence in the record to support the verdict and judgment. (*Cannon* v. *Lewis*, 18 Mont. 402, 45 Pac. 572; *State* v. *Slothower*, 56 Mont. 230, 182 Pac. 270; *Heckaman* v. *Northern Pac. Ry. Co.*, 93 Mont. 363, 20 Pac. (2d) 258.) Substantial evidence is such as will convince reasonable men and on which such men may not reasonably differ as to whether it establishes the plaintiff's case, and if all reasonable men must conclude that the evidence does not establish such case, then it is not substantial evidence. (*Thompson* v. *Virginia Mason Hospital*, 152 Wash. 297, 277 Pac. 691; *Milford Copper Co.* v. *Industrial Com.*, 61 Utah, 37, 210 Pac. 993; *Jenkins & Reynolds Co.* v. *Alpena Portland Cement Co.*, 147 Fed. 641, citing *Grand Trunk Ry.*

*Co.* v. *Ives,* 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485.) See, also, the following decisions by this court: *Black* v. *Martin,* 88 Mont. 256, 292 Pac. 577; *Carey* v. *Guest,* 78 Mont. 415, 258 Pac. 236; *Williams* v. *Thomas,* 58 Mont. 576, 194 Pac. 500, where the above definition is recognized and applied.

Viewing the evidence in the light most favorable to the plaintiff, as we must where, as here, motions for nonsuit and directed verdict were denied (*Green* v. *Bohm,* 85 Mont. 399, 211 Pac. 320; *Savage* v. *Boyce,* 53 Mont. 470, 164 Pac. 887), yet we must say that, although the plaintiff swore positively to the position of the cars at the time of the accident, which position would prove negligence, in the face of the physical facts, the impossibility of the cars being in that position and still be struck from the rear, all reasonable men must conclude that this evidence does not establish plaintiff's case.

While the jurors are the sole judges of the facts, the question as to whether or not there is substantial evidence in support of the plaintiff's case is always a question of law for the court (*Grant* v. *Chicago etc. Ry. Co.,* 78 Mont. 97, 252 Pac. 382), and in determining this question "the credulity of courts is not to be deemed commensurate with the facility and vehemence with which a witness swears. 'It is a wild conceit that any court of justice is bound by mere swearing. It is swearing creditably that is to conclude the judgment.'" (*Casey* v. *Northern Pac. Ry. Co.,* 60 Mont. 56, 198 Pac. 141; *Whitney* v. *Bertoglio,* 65 Mont. 358, 211 Pac. 323; *Vukmanovich* v. *State Assurance Co.,* 82 Mont. 52, 264 Pac. 933.)

A variation to the rule above that we must view the evidence in the light most favorable to the plaintiff is that "if a person testify in his own behalf, and there are material conflicts and contradictions in his testimony, he is not entitled to recover, if he be the plaintiff, unless that portion of his testimony which is least favorable to his contention is of such a character as to authorize a recovery in his behalf." (*Putnam* v. *Putnam,* 86 Mont. 135, 282 Pac. 855; *Lasby* v. *Burgess,* 88 Mont. 49, 289 Pac. 1028; *Merritt* v. *Tague,* 94 Mont. 595, 23 Pac. (2d) 340.) While plaintiff's testimony contains state-

ments which may be said to render his version of the accident more credible than certain of those quoted above, under the last-quoted rule, those statements are to be disregarded. "It cannot be unfair to the plaintiff to deal with his case from the standpoint of his own statements." (*Putnam* v. *Putnam,* above.)

From the foregoing it is clear that the evidence is insufficient to support the verdict and judgment and, therefore, the judgment must be reversed and the cause remanded to the district court with direction to dismiss the action.

MR. CHIEF JUSTICE CALLAWAY, and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.

Rehearing denied June 15, 1934.