DEMOS, Appellant, v. DOEPKER Et Al., Respondents.

No. 8668
Submitted April 21, 1947. Decided June 20, 1947.
182 Pac. (2d) 469

Mr. H. B. Hoffman, of Great Falls, and Mr. Lyman H. Bennett, Jr., of Virginia City, for appellant.

Mr. M. J. Doepker and Mr. T. J. Davis, both of Butte, for respondents.

MR. CHIEF JUSTICE ADAIR delivered the opinion of the Court.

Appeal from a judgment in an action to quiet title to certain mining claims in Madison county, Montana.

The plaintiff, Henrietta Demos, commenced this action in the district court of Madison county naming as defendants: Her husband, William Demos; her sister, Mrs. Valiant, being the same person as C. L. Valiant; her former attorney, M. J. Doepker and the latter's wife; John Way and all other persons unknown claiming any interest in the real property described in the complaint.

Certain questions arising during the course of the litigation have heretofore been determined by this court. See Demos v. Doepker et al., 115 Mont. 183, 141 Pac. (2d) 372, and 116 Mont. 264, 149 Pac. (2d) 544.

In her complaint Henrietta Demos alleges that ever since about the 15th day of October, 1932, she "has been, and now is the owner in fee simple, and in the actual, open, notorious and undisputed possession" of the described real property. These allegations are denied and put in issue by the joint answer of the defendants M. J. Doepker and wife and Mrs. Valiant and also by the separate answer and cross-complaint of the intervener H. F. Weyerstall, as successor in interest of the defendant John Way. The defendant William Demos disclaimed any interest in the property and the defendant John Way defaulted and his default was duly entered.

By reply the plaintiff charged that the defendants Valiant, Doepker, Way and Weyerstall had fraudulently conspired to procure for plaintiff's sister, Mrs. Valiant, an undivided one-half interest in both the common and preferred shares in a certain Common Law Trust, which had been organized to take over

and operate the mining claims, and prayed for an order rescinding plaintiff's transfer of said mining claims to the trustees of said Common Law Trust known as the Potosi Tungsten Mining Company. This is inconsistent with and constitutes a departure from the cause of action stated in the complaint but defendants failed to attack the pleading on such ground.

Pursuant to stipulation the cause was transferred to and tried in the district court of Silver Bow county.

There is evidence that in 1931 the plaintiff, Henrietta Demos, and her sister, Mrs. Valiant, acquired tax title to the mining claims and that the tax deed ran to plaintiff alone.

In 1932 the plaintiff and her sister, Mrs. Valiant, employed the defendant M. J. Doepker, an attorney at law, to examine their title. Mr. Doepker's examination revealed that the tax deed was defective and he commenced and prosecuted to judgment, in the district court of Madison county, an action in the name of plaintiff to correct the defect and to quiet title in the plaintiff.

Thereafter the plaintiff and her sister, Mrs. Valiant, consulted the defendant M. J. Doepker as their attorney about organizing a corporation to take over the property. Mr. Doepker advised the plaintiff, Henrietta Demos, her husband, William Demos, and her sister, Mrs. Valiant, that in his opinion a common law trust was best suited to their requirements and on March 22, 1934, upon their approval, he prepared a formal typewritten declaration of trust whereby and wherein the plaintiff, Henrietta Demos, as party of the first part, trustor and vendor, granted and conveyed to the defendants M. J. Doepker, John Way, William Demos, Mrs. Valiant and to the plaintiff, Henrietta Demos, trustees and vendees, all the mining claims and property described in plaintiff's complaint but in trust for the ''Potosi Tungsten Mining Company,'' a Common Law Trust created by said declaration of trust and its shareholders.

The declaration of trust was duly signed and acknowledged before a notary public by plaintiff as vendor and by all of the trustees, including plaintiff, and thereafter it was recorded in

246

the office of the county clerk and recorder. Sec. 7907, Rev. Codes. The original declaration of trust so signed and acknowledged was introduced at the trial as an exhibit and, on the witness stand, the plaintiff admitted that before executing same "the whole thing from beginning to end" had been read to her by her attorney Mr. Doepker.

Following the organization of the Potosi Tungsten Mining Company and the aforesaid conveyance of the property by plaintiff to the trustees thereof, the trustees issued certain certificates for shares to various persons including William Dunkel, Tom Anagos, Gus Weinstock, James Norton, Basil Brooke, E. M. Brooke, Ernest Walker, and Ernest Pappas. Some of such certificates were issued for money paid therefor while others were issued in payment for work performed on the mining claims. Each and all of the certificates issued and delivered to the above named eight persons were signed by the trustees, including the plaintiff, Henrietta Demos.

On April 20, 1934, at a meeting of all the trustees distribution was authorized of the balance of the participating shares but certificates therefor were not issued because of a disagreement between the defendants William Demos and John Way over the management of the property.

On April 14, 1942, being about eight years later, the next meeting of the trustees occurred and, with all trustees present in person, it was unanimously decided to issue certificates and thereby complete the distribution of shares authorized at the previous meeting of April 20, 1934.

On April 20, 1942, another meeting was held with all trustees present in person, except the plaintiff Henrietta Demos whose proxy was held by her husband, William Demos, and at such meeting the trustees duly authorized the issuance of certificates for the following shares, namely: Jointly to the plaintiff Henrietta Demos and her sister, Mrs. Valiant, 5,000 shares of preferred and 40,000 shares of common; to H. F. Weyerstall, 500 shares of preferred and 3,000 shares of common; to the plain-

tiff Henrietta Demos, 2,500 shares of preferred and 6,000 shares of common; to Mrs. Valiant, 6,000 shares of common and to attorney M. J. Doepker, 6,000 shares of common in payment of his legal services rendered. Certificates for such shares, signed by all the trustees except the plaintiff Henrietta Demos, were issued to the aforesaid persons. The plaintiff declined to sign the certificates on the ground that she denied the right of her sister, Mrs. Valiant, to a one-half interest in the shares so issued jointly to her and plaintiff.

On July 21, 1943, there was another meeting of the trustees with (1) the plaintiff Henrietta Demos, (2) her husband the defendant William Demos, (3) her sister the defendant Mrs. Valiant, and (4) the defendant M. J. Doepker present in person and the defendant John Way by proxy. At such meeting the trustees issued to the plaintiff Henrietta Demos a certificate for 20,000 shares of common and to her sister, Mrs. Valiant, a certificate for 20,000 shares of common and a certificate for 2,500 shares of preferred. These certificates were signed by trustees M. J. Doepker, John Way and Mrs. Valiant, being a majority of the board and section 11 of Article III and section 5 of Article V of the declaration of trust authorizing a majority of said trustees to act in the issuance of shares.

The disagreement over the issuance of the shares to plaintiff and her sister was the beginning of the controversy which resulted in the bringing of this suit by plaintiff.

After hearing the evidence the trial court made written findings of fact and conclusions of law which are incorporated in the judgment rendered.

*Findings of Fact.* The trial court found:

"1. That on the 22nd day of March, 1934, * * * the plaintiff, Henrietta Demos, was the legal owner of the real properties * * * described in * * * her complaint herein.

"2. That on the said 22nd day of March, 1934, the said plaintiff, as trustor and vendor, and M. J. Doepker, John Way, William Demos, C. L. Valiant and Henrietta Demos, as trustees

and vendees, entered into and executed that certain declaration of trust which was received in evidence on the trial hereof * * * which * * * was intended to and did create a common law trust to be known as 'Potosi Tungsten Mining Company'.

''3. That * * * by said declaration of trust the said plaintiff, as such trustor and vendor, sold and conveyed to the said M. J. Doepker, John Way, William Demos, C. L. Valiant and Henrietta Demos, as such trustees and vendees and as joint tenants and not tenants in common, * * * all of said real properties, * * *.

''4. That said declaration of trust provided that shares of beneficial interest in the trust shall be of two classes, to-wit, preferred participation shares and common participation shares; that the number of preferred participation shares shall be thirty thousand and the number of common participation shares shall be one hundred thousand, and that in the first instance the ownership of all such shares shall be in the said vendor and trustor and that the certificates of such shares to be issued by the said trustees shall be the property of the said vendor and shall be delivered to her.

''5. That the said declaration of trust further provided that 'for the purposes of the trust the said vendor and trustor shall deliver to the trustees twenty-five thousand shares of preferred participation shares and sixty thousand shares of common participation shares, reserving to said vendor and trustor the certificates representing the remainder of all the participation shares. Thirty thousand of such common participation shares shall be placed in the share treasury of the trust by the trustees, to be used exclusively for the redemption of the preferred participation shares as in the declaration enjoined. The remaining thirty thousand common participation shares shall be apportioned among the persons engaged with the trustor in the development of the mines and mining property herein conveyed, according to agreements heretofore made between the said trustor and such parties, and the remaining twenty-five thousand shares of preferred participation shares shall be offered for sale by the said

trustees at the par value of one dollar per share and shall in no event be transferred for less than the par value thereof by said trustees. The common participation shares shall be issued without par value.'

"6. That the said declaration of trust further provided that the holders of the preferred participation shares shall be entitled to reecive out of the net income from the operation of said mines and mining property dividends at the rate of $6.00 per annum on each one hundred shares, and that before any dividends on the common participation shares may be paid the dividends accruing to the said preferred participation shares must first be paid.

"7. That on the 18th day of May, 1934, the said trustees, including the plaintiff, issued and delivered to Jake Abramoff a certificate for three hundred shares of the common as compensation for work and labor done by him in and about said mines and mining property; that on the 4th day of October, 1934, the said trustees, including the plaintiff, issued and delivered to Tom Stasenos a ecrtificate for three hundred shares of the common as compensation for work and labor done by him in and about said mines and mining property, and that on the 10th day of March, 1936, the said trustees, including the plaintiff, issued and delivered to William Dunkel a certificate for eleven hundred and ninety shares of the common as compensation for work and labor done by him in and about said mines and mining property.

"8. That on the 18th day of May, 1934, the said trustees, including the plaintiff, issued and delivered to Tom Anagnos a certificate for five hundred shares of the preferred for which he paid them the sum of five hundred dollars; that on the second day of June, 1934, the said trustees, including the plaintiff, issued and delivered to Gus Weinstock a certificate for one hundred shares of the preferred for which he paid them the sum of one hundred dollars; that on the 5th day of July, 1934, the said trustees, including the plaintiff, issued and delivered to William

Dunkel a certificate for two hundred shares of the preferred for which he paid them the sum of two hundred dollars; that on the 5th day of July, 1934, the said trustees, including the plaintiff, issued and delivered to E. M. Brooke a certificate for one hundred shares of the preferred for which he paid them the sum of one hundred dollars; that on the 5th day of July, 1934, the said trustees, including the plaintiff, issued and delivered to Basil Brooke a certificate for one hundred shares of the preferred for which he paid them the sum of one hundred dollars, and that on the 29th day of July, 1935, the said trustees, including the plaintiff, issued and delivered to Ernest Walker a certificate for one hundred shares of the preferred for which he paid them the sum of one hundred dollars; that all of said moneys went into opration and development of said mines and mining property.

"9. That on the 7th day of January, 1938, the said trustees, including the plaintiff, issued and delivered to J. M. Norton a certificate for two hundred shares of the preferred as compensation for services as engineer rendered by him in and about said mines and mining property.

"10. That heretofore the said John Way brought an action in the district court of Silver Bow County, Montana, and another action in the district court of Madison County, Montana, against the said trustees and that thereafter a settlement of both actions was arrived at between the parties as follows, to-wit, that in consideration of the dismissal of said actions by the said John Way the said trustees promised and agreed to issue to his assignee, H. F. Weyerstall, five hundred preferred participation shares and three thousand common participation shares in the trust.

"11. That from and after the 1st day of February, 1932, the defendant, M. J. Doepker, rendered valuable legal services to the said plaintiff, first regarding the conditions of her title to said mining properties and second in quieting her title to the same and as compensation for such services she promised and

agreed to give him stock in any organization to be formed for the operation and development of said properties.

"12. That the only persons to whom certificates of shares in the trust have been delivered are those named in paragraphs 7, 8 and 9 of these findings; that the said trustees could not agree among themselves as to the exact number of preferred participation shares and common participation shares in the trust the said plaintiff was entitled to receive because of claims made by her sister, the said C. L. Valiant, to a part of such shares under an asserted agreement between them.

"13. That there is no money in the treasury of the trust and the only thing which is calculated to give any value at all to the outstanding preferred participation shares and common participation shares and to any such that may hereafter be issued and delivered by said trustees through certificates is the mining properties conveyed by said plaintiff to the said trustees on the said 22nd day of March, 1934, and that without said properties the preferred participation shares and the common participation shares would be worthless."

*Conclusions of Law.* The decree next recites:

"From the foregoing findings of fact the court draws the following conclusions of law, to-wit:

"1. That the plaintiff is not entitled to the relief sought or any relief in this action.

"2. That the plaintiff is not entitled to a recission or cancellation of the transfer of said mining properties.

"3. That it would be inequitable either to quiet the plaintiff's title to said mining properties or to rescind or cancel the transfer of the same.

"4. That the plaintiff has been guilty of laches in not seeking the relief now sought within a reasonable time after the 22nd day of March, 1934, and before innocent third parties became adversely interested.

"5. That the action should be dismissed.

252

"6. That the plaintiff and defendants should each bear the the costs by them incurred in this action."

The court thereupon entered its judgment that the action be dismissed on the merits.

From such judgment plaintiff appealed.

Plaintiff contends that it was error for the court to make its conclusions of law numbered 1 to 5, both inclusive, supra, and to find as facts: (a) That a common law trust under the declaration of trust was created; (b) that valid certificates for common shares were issued and delivered to either Tom Stasenos or William Dunkel; (c) that valid certificates of the preferred were issued and delivered to either Tom Anagnos, Gus Weinstock, William Dunkel, E. M. Brooke, Basil Brooke, Ernest Walker or J. N. Norton and (d) that valid action of the trustees was had in any promise or agreement to issue and deliver to H. F. Weyerstall 500 preferred shares and 3,000 common shares. ·

On appeal to this court the presumption is that the findings of the trial court and the judgment based thereon are correct, and they must be sustained when supported by substantial evidence. State ex rel. Anderson v. Gile, Mont., 172 Pac. (2d) 583.

At the trial considerable testimony was introduced concerning disputed questions of fact, namely: As to the amount of money contributed by Mrs. Valiant at the time she and plaintiff acquired the tax deeds to the property; as to the amounts subsequently advanced by Mrs. Valiant in money or labor to aid in developing and working the mining claims; as to the alleged conspiracy between the defendants Valiant and Doepker; as to whether proper records and minutes had been kept of the trustees' meetings and as to the interest which plaintiff's sister, Mrs. Valiant, had in the property, including the mining claims and in the preferred and common shares in the Common Law Trust.

Testimony introduced on behalf of Mrs. Valiant was to the effect that she owned an undivided one-half interest in the mining claims and later in the preferred and common shares in the

Common Law Trust, while plaintiff contended and, in her testimony, admitted that her sister, Mrs. Valiant, had a one-sixth interest therein.

The evidence on each and all of the foregoing issues is in direct ██ and substantial conflict but it stands undisputed in the record that on March 22, 1934, plaintiff by formal declaration of trust which she that day executed transferred all her interest in the real property involved in this action to the trustees of the Potosi Tungsten Mining Company so that some eight years later, to-wit on June 24, 1942, on which date she commenced this action to quiet her alleged title, plaintiff was not then the owner of said mining claims or any part thereof.

The record shows that there is substantial conflict in the evidence upon all of the disputed questions raised and considered by the court but there appears therein substantial evidence which, if believed by the trial court, is sufficient to sustain each of the findings of fact upon which error was assigned. The trial court's finds of fact amply sustain the conclusions of law made and under the well-established law of this jurisdiction, the trial court's judgment will not be disturbed when, as here, it is supported by substantial evidence. Sanders v. Lucas, 111 Mont. 599, 111 Pac. (2d) 1041.

Judgment is affirmed.

Associate Justices Choate, Cheadle, Angstman, and Metcalf, concur.