GILBERT, Respondent, *v.* BOSTONA MINES CO., APPELLANT.

No. 8794.

Submitted April 8, 1948.   Decided May 11, 1948.

195 Pac. (2d) 376.

Mr. John Collins, of Dillon, for appellant.   Mr. Collins argued the cause orally.

Mr. James E. Kelly, of Dillon, for respondent. Mr. Kelly argued the cause orally.

MR. JUSTICE CHOATE delivered the opinion of the court.

In this action plaintiff recovered on verbal contract for the performance of labor and was awarded foreclosure of a labor lien. The case was tried to the court without a jury and the court made findings and conclusions in favor of the plaintiff on all material issues. Accordingly, this appeal falls within the rule which we have frequently announced that on appeal to this court the presumption is that the findings of the trial court and its judgment based thereon are correct and must be sustained when supported by substantial evidence. See Sanders v. Lucas, 111 Mont. 599, 111 Pac. (2d) 1041, and cases cited therein. See also the recent cases of Demos v. Doepker, Mont., 182 Pac. (2d) 469, 473; state ex rel. Anderson v. Gile, Mont., 172 Pac. (2d) 583; Ryan v. Bloom, Mont., 186 Pac. (2d) 879; Hankins v. Waitt, Mont., 189 Pac. (2d) 666.

The controlling question presented by this appeal is: What was the agreement between the parties for the doing of the work involved in this action? Plaintiff's version of the agreement both as pleaded in his complaint and established by his testimony was as follows: Defendant owned a mill suitable for the treatment of ores, which mill with accompanying equipment was installed and ready to operate except for the want of a power line to supply the necessary electrical power for the operation of said plant. To secure this power defendant employed plaintiff to perform labor in locating and surveying a high tension pole line from a point near Bannack, Montana, to said mill, a distance of about 26 miles. Plaintiff testified as follows concerning a conversation between himself and Mr. Bostwick and W. R. Allen, the latter being a director and officer of the defendant corporation, relative to the doing of said work:

"I was informed they wanted to get a high tension line to Bannack and they discovered that the Bannack line was the shorter way and I was asked whether or not I could do the

work, and then the means of working and conditions that would be required came up and I was asked whether I would take a lump sum contract. I knew nothing about what the requirements were and I knew nothing about the condition of the public land surveys that I would have to make at all, and I also knew nothing about the requirements I would have to work under so I could not figure on anything of that kind without making an excessive amount to play safe so we discussed the proposition of working on the ten dollars a day and the car situation was discussed and the car owned by the company was not in condition at the time to be used and so it came back again to where my car would have to be used. I had also to assume all expenses and everything in the use of the car as long as I was using my own car and mileage was the only means of my recovering the expenses or supplies or other expenses incurred.

"Q. What was said in addition to that as to whether or not you were to go to work at that rate? A. I was instructed to go to work on the power line. They wanted to get it through as speedily as possible.

"Q. Was that after you told them about the salary of ten dollars a day? A. Yes sir.

"Q. They told you to go to work. A. Yes,

"Q. Tell us in more detail what was said about the use of the car and how you were to be paid for that. A. As I understood it, it was to be six cents a mile. There was no offer to supply gasoline or anything of the sort on their account and my understanding was that six cents a mile was the only compensation I would recover for the use of the car.

"Q. Did you use your car? A. I did.

"Q. Did you start to work thereafter? A. Yes, I did."

Again plaintiff was asked, "Were you told to go to work after you told them you would work at ten dollars a day and six cents a mile for your car?" to which he answered, "Yes."

Defendant's version of said conversation and the resulting

agreement was as follows: "I asked Mr. Gilbert if the job could be done for $500 and he said yes and that ended there.

"Q. Tell us whether you then agreed to pay him five hundred dollars for the job? A. Well, I gave him the job.

"Q. At what price? A. Well, my understanding was it was going to be within the five hundred dollars."

Clearly a conflict is presented between plaintiff's testimony and that of Mr. Allen concerning what was agreed upon by the parties. The trial court, however, resolved that conflict in favor of the plaintiff and there is ample supporting evidence to sustain its findings.

Plaintiff's testimony as to the agreement is also corroborated by the following facts: Upon this contract for work which defendant asserts plaintiff agreed to perform for $500, the record shows that plaintiff was paid one check or voucher for $481.50 and another for $290.50, a total of $772.00. The check for $290.50 was issued on June 9, 1945, after plaintiff had ceased working on the survey of the pole line. Said check was given for twenty and a half days work at $10 a day and for 1,432 miles at 6¢ a mile. It is true Mr. Allen testified that Mr. Risley, the secretary of the company, was writing the checks and that the check for $290.50 was issued while Allen was away and that he knew nothing about it. It was for the trial judge to appraise the weight to be given this testimony of Mr. Allen's, since, plainly, the issuance to plaintiff of checks for $772 is incompatible with the theory that plaintiff had agreed to do the work for $500.

Defendant's brief raises the following questions which we have considered and find without merit:

1. Admissibility of evidence of mileage traveled. On plaintiff's testimony that he was to be paid 6¢ a mile for the use of his car, that evidence was admissible.

2. That plaintiff quit work without having completed the survey. Plaintiff testified that he worked by the day and that on June 2nd he was told by Mr. Goodwin that he (Goodwin) was going to other work and that plaintiff "was to see Mr.

Allen''; that plaintiff tried several times to see Mr. Allen but never succeeded in doing so. On this point Allen testified, ''We dropped the matter when Mr. Gilbert left the line.''

3. Other objections to the introduction of evidence were properly overruled by the trial court in the light of plaintiff's testimony concerning the nature of the contract.

4. Entire and indivisible contract. On the basis of plaintiff's testimony, the contract was not an entire and indivisible one for the completion of a survey. It was a contract to work for defendant at $10 a day and 6¢ a mile for the use of a car in surveying a pole line. That plaintiff entered upon said work and prosecuted it until defendant abandoned the project is clearly established.

5. Variance. We find no variance between plaintiff's pleading and his proof as to the terms of the contract.

The judgment is affirmed.

Mr. Chief Justice Adair and Associate Justices Gibson, Angstman and Metcalf, concur.

### On Motion for Rehearing

Mr. Justice Choate:

Defendant's petition for rehearing is based chiefly on the contention that plaintiff's testimony on cross-examination differs from that on his direct examination in that the latter tended to establish the contract pleaded in the complaint, namely, an agreement to perform labor for defendant in surveying a pole line at an agreed compensation of $10 a day, while the former tended to establish that plaintiff agreed to make a *complete* survey of said line at all points, including the furnishing of maps, etc.

It is therefore urged that this case is governed by the rule announced by this court in Whorley v. Patton-Kjose Co. Inc., 90 Mont. 461, 5 Pac. (2d) 210, 218, that respondent ''is not entitled to recover unless that portion of his testimony least favorable to his contention is of such a character as to authorize recovery for him.''

Admitting that the testimony alluded to was given by plaintiff on his cross-examination, it is in our opinion capable of reconcilement with his testimony in his case in chief as being merely an identification of what the job consisted of, namely, what had to be done to complete the survey on which plaintiff had agreed to perform labor for $10 a day for his personal services, and *not* a statement of what was necessary to complete plaintiff's contract. So understood there is no contradiction in plaintiff's testimony on direct and cross-examination.

Assuming that there is a conflict in plaintiff's testimony on direct and cross-examination, we do not consider that on the total facts in evidence in this case we are bound to reject plaintiff's testimony on direct examination because of such conflict, in view of the fact that the "common sense rule" invoked by appellant would seem to establish the fact that defendant *did* hire plaintiff on the terms testified to by plaintiff in his direct examination. We have reference to the fact to which attention is directed in our opinion, that defendant paid plaintiff $772 for work which it says plaintiff agreed to do for $500; that it made this payment at the rate of $10 a day for plaintiff's work and that the last payment of $290.50 was made after plaintiff had ceased working on the survey.

It is our conclusion that we cannot with propriety say that the evidence preponderates against the decision of the trial court. The motion for rehearing is denied.

Mr. Chief Justice Adair and Associate Justices Gibson, Angstman and Metcalf, concur.

Rehearing denied July 2, 1948.