HANSON, Respondent, *v.* LANCASTER, Appellant.

No. 9009.

Submitted December 5, 1950. Decided January 5, 1951.

226 Pac. (2d) 105.

442

Messrs. Shallenberger & Paddock, Missoula, for appellant. Mr. Shallenberger argued orally.

Messrs. Green and Hanson, Missoula, for respondent. Mr. Green argued orally.

MR. JUSTICE ANGSTMAN:

This action was brought to cancel a deed to 120 acres of farm lands in Lake county alleged to have been given by plaintiff to defendant on May 20, 1949, through fraud and without the payment of any consideration. Defendant was then renting the land.

The fraud is alleged to have consisted of false and fraudulent representations by defendant that plaintiff would lose her property by the foreclosure of a mortgage held by Walter Stimson if she did not deed the property to him; that defendant in dealing with third parties is charged with falsely representing that he had paid plaintiff a valuable consideration for the conveyance.

The answer of defendant denies the charge of fraud and alleges that plaintiff at the time in question was three years behind in her payments on the Stimson mortgage; that she also owed three years' taxes and water charges in the sum of $574.47; that plaintiff informed defendant of these facts after he had taken possession of the property as a tenant and stated that her credit was not good and that she was unable to meet the payments and could not save the farm from foreclosure and requested him to take title to the property and use his credit and resources to borrow money and to save the property for her; that it was understood between plaintiff and defendant that defendant would use his name and credit to mortgage the property and pay off the liens and encumbrances with money which he would obtain from the mortgage and that defendant would make needed improvements on the premises and treat the property as his own; "and that if the plaintiff should within the next eight years be able to raise that amount of money which would enable the defendant to pay off his indebtedness aforesaid and to make him whole again, the defendant would sell back the said ranch to the plaintiff, and that if the ranch were sold back to the plaintiff the defendant would receive the right to lease same for such period of the said eight year term as should be remaining as of the date of such selling back."

That in pursuance of this understanding defendant took the deed, obtained a $4,500 loan through a mortgage on the property for which he became indebted and used the proceeds of the loan to pay off the mortgage to Stimson, back taxes and water charges and improvements, and that it would take $6,600 to make him whole.

The reply put in issue the material allegations of the answer.

The cause was tried to the court without a jury. At the conclusion of the evidence each party submitted proposed findings of fact and conclusions of law.

Those submitted by plaintiff adhered to the theory of the

complaint and requested a finding that plaintiff is entitled to a cancellation of the deed.

Those submitted by defendant adhered to the theory of the answer and particularly that the deed is a valid instrument entitling defendant to hold the property until such time as plaintiff repays to him such sums as are due him on account of the mortgage which he gave to obtain money to discharge the Stimson mortgage, taxes and water charges, less any credits accumulated because of her share of crops going to reduce the Stimson mortgage and the other claims paid by defendant.

The court rejected the findings offered by the parties and adopted findings of its own. It found that plaintiff had failed to prove by a preponderance of the evidence the fraud and misrepresentations alleged which would justify a cancellation of the deed. It also found that defendant has failed to prove by a preponderance of the evidence the contemporaneous oral agreement pleaded in the answer. The court found that on May 16, 1949, plaintiff sold the land to defendant for $10,000; that on June 10, 1949, defendant borrowed $4,500 from John W. Healey and gave a mortgage to him in that amount; that with the proceeds of $4,500 he paid the following obligations:

| | |
|---|---:|
| The Stimson mortgage, principal and interest | $3,322.88 |
| Water Charges and taxes | 574.47 |
| Mrs. Kemp Commission for Securing the Loan | 225.00 |
| Cost of Abstract | 17.00 |
| Insurance | 19.50 |
| Revenue Stamps | 3.30 |
| Received by Defendant for Improvements | 337.85 |
| Total | $4,500.00 |

The court adjudged that plaintiff had a vendor's lien on the property to secure the amount due of $5,500 which was subject to the first mortgage to Healey in the sum of $4,500.

It also found that the evidence supporting the sale went in

without objection and that the pleadings were deemed amended to conform to the proof.

Defendant has appealed from the judgment. The specifications of error question the propriety of the court's findings that there was a sale of the property by plaintiff to defendant for $10,000 and hence of the judgment in plaintiff's favor instead of one for defendant. The principal question is whether there is sufficient evidence to warrant the finding that defendant bought the property from plaintiff for $10,000.

On direct examination of plaintiff she testified in support of the allegations of her complaint, except that she stated that Mr. Stimson had told her that he was going to foreclose his mortgage. But on cross-examination she said that the first information she had that Stimson was going to foreclose came from defendant. She was asked this question: "When you gave Mr. Lancaster the deed, did you give him that deed as consideration, that is, did you because he was buying the property from you?" Her answer was: "I thought he was going to help me out. I hadn't intended to sell the property to him at all."

She further testified:

"Q. It was your belief that he was offering his services to you to prevent the foreclosure of this mortgage? A. Yes, sir.

"Q. Was there anything said in this transaction as to when the property would be returned to you? A. No, sir, not that I recall.

"Q. And to your knowledge, did Mr. Lancaster remortgage the property when he obtained the deed? A. Yes, sir.

"Q. He paid off the Stimson mortgage and the taxes and water charges? A. Yes, sir."

On cross-examination plaintiff testified:

"Q. Mr. Lancaster has lived up to your agreement with you by paying off your mortgage? A. Yes, he has paid off the interest and the taxes. Half of the taxes. As far as I know. * * *

"Q. You said that Mr. Lancaster didn't pay you any money at the time he took the deed? A. No, he did not.

446

"Q. What money did he agree to pay you at that time? A. The understanding was that he was going to pay the difference. He was to pay off the mortgage and the taxes, and he was figuring on giving me the difference. He said the money was down there in St. Ignatius.

"Q. What difference? A. On the ten thousand.

"Q. Then you now claim that Mr. Lancaster owes you money on this place? Is that it? A. That was my idea, that he was taking it over.

"Q. You have testified a minute ago that Mr. Lancaster never promised to pay you any such difference at all. There is nothing in your complaint, or your reply, or your former testimony, that he was to pay you any money. As a matter of fact, I asked you what Mr. Lancaster promised you that he hadn't lived up to, and you didn't answer my questions. Now you say he was to pay you the difference between the $4,500.00 of the new mortgage and the $10,000.00 which would make another $4,500.00?

"The court: No, that isn't what she said. She said he was to pay her, after paying that mortgage and the taxes and the water charges, to pay her the difference up to $10,000.

"Q. All of that would come to $4,500.00 or very close to it? A. I haven't really figured it out. I suppose my attorney has it there.

"Q. You now say that, instead of falsely misrepresenting to you and taking this deed under false pretenses, that he really bought the place from you, and now owes you a balance on the purchase price? A. (No answer.)

"Q. I must have an answer to this question because it changes the entire theory of your case. Mr. Shallenberger: Let the record show no answer.

"Q. Mr. Lancaster really wasn't agreeing to pay you any money when he took the deed from you, did he? A. He said at Mrs. Kemp's office that the money was in the Mission, and that it would be straightened up.

"Q. Of course, you and Mr. Lancaster both wanted Mrs. Kemp

and all the rest of the world to believe that Mr. Lancaster really owned the land so that he could mortgage it? Isn't that true? And get the money to pay your mortgage off, which was delinquent? Isn't that why Mr. Lancaster and you both talked to Mrs. Kemp and agreed with Mrs. Kemp that Mr. Lancaster was the owner of the place? That he was buying it? Isn't that the purpose of it? A. Yes, that he was buying it.

"Q. And in truth, Mr. Lancaster wasn't to pay you any money for it, was he?

"The Court: She has just said what he was going to pay.

"Q. The statement—What did you expect of Mr. Lancaster at the time you signed the deed? Did you expect money from him? A. Yes, I did.

"Q. How much? A. The balance of that $10,000.00.

"Q. Did you have any agreement? A. No, only the deed. That was all."

As to negotiating a sale there is the further testimony of plaintiff on cross-examination as follows:

"A. I don't know when he was going to return the ranch.

"Q. He was supposed to return the ranch to you at some time? A. I wouldn't know whether he did or not.

"Q. He was supposed to? He said he would, didn't he? A. All I know that was said, that he would take my share of the crop and pay on the mortgage and interest. Help to take care of it. * * *

"Q. Even though he was to pay you $5,500.00, you were still going to help him out to pay off this second mortgage that he put on for $4,500.00. A. Yes. * * *

"Q. You knew then what the situation was? That Mr. Lancaster didn't have anything, but would have to use his credit to lift the mortgage that you had on the place? Isn't it the truth that you and Mr. Lancaster decided on this arrangement so that you could pretend that Mr. Lancaster was the owner of the property so that he could mortgage it and help you out? A. On our

448

way to Polson I asked Lancaster if it would be necessary for him to have the deed. He said, absolutely. * * *

"Q. The deed refers to Mr. Lancaster and says he hereby agrees to pay and assume your mortgage of July 10, 1944. That really was what the deed was about, wasn't it? That is why the deed was made? A. Yes.

"Q. It wasn't made with any sale of the property in mind at all, was it? A. I figured he was buying it, the way he talked."

Defendant flatly denied that he bought the farm but admitted that in order to borrow money on the place he led the real estate agent, Mrs. Kemp, and Walter Stimson to believe that he had bought it. He testified that plaintiff knew of this purpose and that the deed was given merely to enable him to borrow money and without any intention to buy the place.

Mrs. Kemp testified to statements made by defendant in the presence of plaintiff to the effect that he was going to pay plaintiff for the place with money at St. Ignatius.

The evidence fairly considered fails to show an agreement on the part of defendant to pay $5,500 for the place and to assume the Stimson mortgage as found by the court. Plaintiff herself said there was no agreement so to do but at most that plaintiff had merely "figured" that defendant was buying the place from the way he talked.

But if it can be said that there is a bare scintilla of evidence supporting a sale, the rule is that when a party to an action gives contradictory evidence in his own behalf, he is dealt with fairly by giving credence to that portion of his evidence which is least favorable to him, Morton v. Mooney, 97 Mont. 1, 33 Pac. (2d) 262; Cullen v. Peschel, 115 Mont. 187, 142 Pac. (2d) 559; Gilbert v. Bostona Mines Co., 121 Mont. 397, 195 Pac. (2d) 376, where as here there is no other evidence in the case corroborating that given which supports the version most favorable to such party. Lake v. Webber, 120 Mont. 534, 188 Pac. (2d) 416.

Plaintiff contends that there is other evidence besides that given by her which supports the court's finding and points to

allegations in the answer which support the version of a sale. The particular portions of the answer relied on are allegations to the effect that defendant after obtaining the deed would be treated as the owner and if plaintiff would within eight years make him whole defendant would *sell back* to plaintiff.

From this plaintiff's counsel argues that defendant as well as plaintiff regarded the transaction as a sale.

The transaction may be regarded as a sale so far as third persons were concerned and yet there would be no sale in fact if there was lacking a promise on the part of defendant to buy. Plaintiff's counsel argues that the statements made by defendant to third persons that he was buying the property and paying $10,000 for it is some corroboration of plaintiff's version of a sale for that amount.

As against Mr. Healey who lent defendant $4,500 on the strength of the written record showing that he was the owner of the property, the law would interpose an estoppel to deny a sale. Higby v. Hooper, 124 Mont. 331, 221 Pac. (2d) 1043.

The statements above recited were made to carry out the purpose of the arrangement between plaintiff and defendant. The court's function was but to ascertain what the arrangement between them was and this depended upon what had taken place between them. Mrs. Kemp testified that the arrangement between plaintiff and defendant had been consummated before they came to her office. Both parties understood, that whatever was said after they arrived at Mrs. Kemp's office had nothing to do with the agreement between themselves. They met there to carry out that agreement, or at least a portion of it.

The court was in error in finding that defendant purchased the property for $10,000 and in entering judgment in favor of plaintiff in the sum of $5,500.

While the court found that defendant did not prove the agreement relied upon by him by a preponderance of the evidence, we think all the circumstances in the case point to the

conclusion that the agreement was substantially as pleaded by him.

Such an agreement makes defendant merely the holder of the legal title to the property as security for the payment of the mortgage given by him as purported owner to Mr. Healey. Plaintiff is still the equitable owner of the property subject only to the Healey mortgage.

Defendant's dealing with the property is merely in a trust capacity. If the Healey mortgage is paid off by defendant with his own money, he merely becomes subrogated to the rights of Mr. Healey. If he pays it off with credits belonging to plaintiff, then plaintiff becomes reinvested with the legal title.

Defendant's evidence was in some respects contradictory and particularly on the issue as to whether he was obligated to give plaintiff credit on the Healey mortgage for her share of the crops. Where his statements were contradictory, we subject them to the rules above stated and accept that portion which is the least favorable to him.

We hold that under the arrangement between plaintiff and defendant, defendant was and is obligated to give plaintiff credit on the Healey mortgage for her share of the crops produced and to be produced on the farm. In order that plaintiff may be advised of her rights from time to time, defendant should upon request furnish to her a statement of the credits thus allowed so as to enable her to know how much she would be obliged to pay at any given time to have the title reinvested in her.

Such statements shall be presented at least annually without any request from plaintiff, and plaintiff shall be entitled upon request to such additional statements as she may require. There was dispute in the evidence as to whether plaintiff should have five years or eight years within which to make defendant whole. On that point we accept the evidence most favorable to plaintiff and hold that she is entitled to eight years and this notwithstanding that the Healey mortgage was one running for but five years.

One other point must be noticed specially. There is some evidence that the arrangement between the parties dealt with the question of improvements to be made on the property. Defendant contends that under the arrangement he has authority to make improvements on the farm and charge the cost thereof to plaintiff. The evidence bearing upon this point was vague and indefinite as to the character of improvements contemplated, if any.

We hold that defendant has not the right to make improvements on the premises and to charge the plaintiff therefor without obtaining her consent in writing in advance of making the improvement.

The judgment is accordingly reversed and the cause remanded with directions to enter judgment for defendant in accordance with the views herein stated.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES METCALF, BOTTOMLY and FREEBOURN, concur.